Robert Gordon MARSHALL, Plaintiff,

v.

Janet RENO, Attorney General; Kathleen Hawk, Director, Bureau of Prisons, Department of Justice; Gerald Shur, Senior Associate Director, Office of Enforcement Operations, Department of Justice; Gurnia Michaux, Senior Associate Director, Office of Enforcement Operations, Department of Justice; J.W. Tippy, Warden, FCI Ray Brook; John Brush, Warden, FCI Oakdale; Gary Henman, Warden, FDC Oakdale; Doris Meisner, Commissioner, Immigration and Naturalization Service, Department of Justice; Joan Higgins, Assistant Commissioner, Detention and Deportation, Immigration and Naturalization Service; John Caplinger, District Director, New Orleans, Louisiana, Immigration and Naturalization Service; Nancy Hooks, Immigration and Naturalization Service, Oakdale, Louisiana, Defendants.

Civil Action No. 95–1144(CRR).

United States District Court, District of Columbia.

Feb. 1, 1996.

Robert Gordon Marshall, Mission, British Columbia, Canada, pro se.

William Mark Nebeker, U.S. Attorney's Office, Washington, DC, for Janet Reno, Doris Meisner, Joan Higgins, Kathleen Hawk, John Caplinger, Nancy Hooks, John Brush, Gary Henman.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court in the above-captioned case is the defendants' Motion to Dismiss and the plaintiff's Opposition thereto. Upon careful consideration of the parties' pleadings, the entire record herein, and the applicable law, the Court shall grant the defendants' Motion.

## BACKGROUND

The plaintiff, a Canadian citizen currently residing in Canada, asserts two sets of claims regarding his former incarceration in various federal facilities pursuant to a four-year sentence he received in the United States District Court for the Eastern District of New York. First, the defendant alleges that defendants Reno, Meisner, Higgins, Hawk, Caplinger, Hooks, Brush, and Henman conspired to deprive him of his civil rights by denying him access to various release programs available to United States citizens, and by failing to expeditiously deport him, thereby subjecting him to prison conditions harsher than those he would have faced in Canadian prisons. As relief therefor, the defendant seeks fifty thousand dollars in compensatory damages and fifty thousand dollars in punitive damages.

Second, the plaintiff alleges that defendants Reno, Shur, Michaux, and Tippy conspired to arbitrarily deny him transfer to a Canadian prison pursuant to a treaty in effect between the United States and Canada, and to thereby deny him treatment equal to that afforded similarly situated inmates.[1] For this claim, the defendant seeks one hundred thousand dollars in compensatory damages and one hundred thousand dollars in punitive damages.

## DISCUSSION

As a threshold matter, in light of his repeated invocation of *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), it would appear that the plaintiff seeks to recover against the defendants in their individual capacities. However, the basis for the plaintiff's claims is unclear. He claims that the defendants violated his rights under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments, yet he fails to set forth any substantive discussion of a particular constitutional provision in support of his claims.

■ Several of the Amendments are clearly inapplicable to the facts which the defendant posits. Given that he fails to identify any speech, religious, or associational interest allegedly impaired by the defendants' actions, the plaintiff fails to articulate a claim under the First Amendment. Similarly, the plaintiff does not allege that he has been subject to an unlawful search or seizure, or any other government action sufficient to trigger the protections of the Fourth Amendment. The plaintiff's invocation of the Ninth Amendment as a basis for recovery is particularly puzzling given that the Ninth Amendment does not set forth any particular guarantees, but is merely a rule of construction. And because the defendants are all federal officials, and the plaintiff does not allege that the alleged deprivations were accomplished

1. This second set of claims was originally asserted in Civil Action No. 95–1406, which was consolidated into Civil Action No. 95–1144.

under color of state law, the Fourteenth Amendment is also inapplicable.[2]

■ The apparent basis of the plaintiff's claim under the Eighth Amendment is that the failure to either deport or transfer him to a Canadian prison was cruel and unusual because the defendants thereby subjected him to less humane conditions than he would have faced in the Canadian prison system. *See* Complaint, Civ. A. No. 95–1406, at 12. Notwithstanding the plaintiff's attempt to use the allegedly more progressive Canadian prison system as a stalking horse in order to satisfy the objective component of a cognizable Eighth Amendment claim, the Court finds his claim under the Eighth Amendment frivolous. So long as a sentence imposed is within the statutory limits, the mere execution thereof cannot form the basis of an Eighth Amendment claim. *See Lustgarden v. Gunter*, 966 F.2d 552, 555 (10th Cir.1992); *United States v. Gourley*, 835 F.2d 249, 252–53 (10th Cir.1987).

However, in light of the plaintiff's *pro se* status, the Court shall liberally construe his Complaint as setting forth the only potentially cognizable constitutional claims: that the failure to either deport or transfer him to Canada, and to enroll him in a community corrections program or place him in a minimum security facility deprived him of his due process and equal protection rights under the Fifth Amendment. Still, the Court is unable to exercise jurisdiction over the nonresident defendants, the defendant fails to state a claim upon which relief can be granted, and the defendants are entitled to qualified immunity. Therefore, the Court shall grant the defendants' Motion to Dismiss.

## I. The Court is unable to exercise jurisdiction over nonresident defendants Caplinger, Hooks, Brush, and Henman because they are not alleged to conduct any business or make any *contracts* in the District of Columbia, nor is any injury alleged to have been suffered in the District.

■ The District of Columbia long-arm statute, D.C.Code § 13–423, is the only basis upon which personal jurisdiction may be obtained over defendants who do not reside within or maintain a principal place of business in the District of Columbia. *Reuber v. United States*, 750 F.2d 1039, 1049 (D.C.Cir. 1984). The statute provides that a court in the District of Columbia may exercise personal jurisdiction over a defendant with regard to a claim arising from the defendant's

  (1) transacting any business in the District of Columbia;

  (2) contracting to supply services in the District of Columbia;

  (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

  (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [or she] regularly does or solicits business, [or] engages in any other persistent course of conduct ... in the District of Columbia.

D.C.Code § 13–423(a)(1)–(4) (1981).

Defendants Caplinger, Brush, Henman, and Hooks work in Louisiana. Defendant Tippy works in New York. Because these defendants are not alleged to conduct any business or make any contracts for services in the District of Columbia and because no injury is alleged to have been suffered in the District of Columbia, the Court cannot exercise jurisdiction over them.

## II. The plaintiff's fails to state a claim upon which relief can be granted.

## A. The plaintiff's claims against defendants Reno and Hawk must be dismissed because respondeat superior may not be the basis of a *Bivens* suit.

■ Absent any allegations that defendants Reno and Hawk personally participated in the events which gave rise to the plaintiff's claims, or any corroborative allegations to support the inference that these

---

**2.** The guarantee of equal protection by the federal government is secured by the Fifth Amendment, not the Fourteenth. *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954) (finding equal protection component in the Due Process Clause of the Fifth Amendment).

defendants had notice of or acquiesced in the improper securing of detainers against the plaintiff by their subordinates, dismissal is appropriate. *See Haynesworth v. Miller,* 820 F.2d 1245, 1259 (D.C.Cir.1987) (fellow government employees cannot be held liable under the theory of respondeat superior for either constitutional or common law torts); *Smith–Bey v. District of Columbia,* 546 F.Supp. 813, 814 (D.D.C.1982) (same). Respondeat superior has been consistently rejected as a basis for the imposition of § 1983 or *Bivens* liability. *See, e.g., Monell v. Dep't of Social Srvcs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 375–76, 96 S.Ct. 598, 606–07, 46 L.Ed.2d 561 (1976); *Boykin v. District of Columbia,* 689 F.2d 1092, 1097–99 (D.C.Cir.1982); *Tarpley v. Greene,* 684 F.2d 1, 9–11 (D.C.Cir.1982). Therefore, any potential *Bivens* claims against these defendants, whose only relationship to the instant litigation is their ultimate supervisory status, must be dismissed.

**B. The plaintiff's conspiracy allegation is too generalized and conclusory to state a claim upon which relief can be granted.**

█ To the extent that the plaintiff suggests the existence of a conspiracy between the defendants, his allegations fail to state a claim upon which relief can be granted. As the United States Court of Appeals for the District of Columbia Circuit has observed,

> [u]nsupported factual allegations which fail to specify in detail the factual basis necessary to enable [defendants] to intelligently prepare their defense, will not suffice to sustain a claim of governmental conspiracy to deprive [plaintiffs] of their constitutional rights.

*Martin v. Malhoyt,* 830 F.2d 237, 258 (D.C.Cir.1987). The plaintiff fails to assert any factual basis to support the conclusion that a conspiracy existed. Therefore, the plaintiff's conspiracy claims will be dismissed for failure to state a claim upon which relief can be granted.

**C. There is no protected liberty interest in obtaining deportation or transfer to a foreign prison, or in being incarcerated at either a particular facility or a particular security classification. Therefore, the plaintiff fails to state a cognizable due process claim with respect to the failure to deport or transfer him to a Canadian prison.**

█ The plaintiff alleges that, by refusing to effect a Treaty transfer or deport him, the defendants caused him to be imprisoned more than four thousand miles from his family, and for two year's longer than he would have been had he been transferred to Canada. With respect to his deportation, the plaintiff alleges that the refusal to expeditiously deport him caused him to be imprisoned six months more than would a United States citizen under similar circumstances. He also alleges that he was denied access to various release programs available to United States citizens in similar circumstances. Liberally construed, the plaintiff's claim is that, by refusing to transfer, deport, or enroll him in any release programs, the defendants have effectively subjected him to longer incarceration and more severe conditions than he otherwise would have faced. In essence, the plaintiff claims that he has an enforceable liberty interest in being transferred or deported, and enrolled in certain release programs, in that it was incumbent upon the defendants to ameliorate his situation in such a manner.

█ Liberty interests protected by the Fourteenth Amendment may arise directly from the Due Process Clause itself or from the laws of the states. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989); *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983). However, "lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Helms,* 459 U.S. at 467, 103 S.Ct. at 869. *See also Hernandez v. Coughlin,* 18 F.3d 133, 136–37 (2d Cir.1994). Thus, the Court has held that an inmate has no inherent liberty interest in commutation of his sentence, *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69

L.Ed.2d 158 (1981); in being paroled, *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668 (1979); in receiving good-time credit for satisfactory behavior while in prison, *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); in avoiding "administrative" (nonpunitive) segregation from the general prison population, *Helms,* 459 U.S. at 468, 103 S.Ct. at 869–70; or in remaining in one correctional institution rather than another, *Olim v. Wakinekona,* 461 U.S. 238, 248, 103 S.Ct. 1741, 1746–47, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538–39, 49 L.Ed.2d 451 (1976).

In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not itself give rise to a protected interest in being confined in the general prison population. *Id.* at 467–68, 103 S.Ct. at 869–70. Instead, the Clause standing alone requires only that an inmate be confined under conditions consistent with his sentence, *id.* at 468, 103 S.Ct. at 869–70 (citing *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547–48, 49 L.Ed.2d 466 (1976)), and that "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," *id.* See also *Olim v. Wakinekona,* 461 U.S. 238, 247, 103 S.Ct. 1741, 1746, 75 L.Ed.2d 813 (1983) (transfer for confinement in another state is within normal range of custody); *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (transfer within state is within normal range of custody); *cf. Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (transfer to mental hospital is not within normal range of custody).

The Supreme Court recently made clear in *Sandin v. Conner,* — U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that, while governments may create by statute or regulation interests which are protected by the Due Process Clause even though the same interests are not among those protected by the Clause standing alone, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at ——, 115 S.Ct. at 2300; *see also Montanye,* 427 U.S. at 242, 96 S.Ct. at 2547 ("As long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed on him [or her] and are not otherwise violative of the Constitution, the Due process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."). Therefore, as a threshold matter, courts are directed to determine whether the "conditions suffered were expected within the contour of the actual sentence imposed." *Id.* at —— n. 9, 115 S.Ct. at 2301 n. 9.

The plaintiff claims that it was understood by him, his trial attorney, the sentencing judge, and the Assistant United States Attorney for the Eastern District of New York who handled his case that he would be transferred to Canada. *See* Complaint, Civ. A. No. 95–1406, at 14. Specifically, he alleges that the prosecutor and other federal authorities agreed not to oppose a treaty transfer and that the sentencing judge accordingly recommended that the plaintiff be designated to FCI Ray Brook, the departure institution for prisoners awaiting treaty transfers. *Id.* at 11. Liberally construing the plaintiff's claim in light of *Sandin,* he is apparently arguing that his transfer to Canada is part of his sentence and that, as a result of the defendants failure to transfer him, his continued incarceration within the United States is not "within the contour of the actual sentence imposed." *Id.* at —— n. 9, 115 S.Ct. at 2301 n. 9.

Prisoners have no right to be incarcerated in a particular institution. *Olim, supra.* Furthermore, it is beyond the authority of the sentencing judge to order where a defendant will be incarcerated. Rather, the authority to place federal defendants at any particular institution is vested in the Bureau

of Prisons. 18 U.S.C. § 3621.[3] Because it was a matter beyond the control of the sentencing judge, it cannot be said that location of the plaintiff's confinement—whether here or abroad—was "within the contour of the actual sentence imposed." Therefore, any change with respect thereto cannot serve as the predicate for a due process claim.

■ Moreover, the decision whether to transfer an inmate pursuant to a treaty is within the discretionary authority of the Attorney General and is not subject to judicial review; no language in the treaty's implementing legislation affords the plaintiff with a right to a transfer. *Bagguley v. Bush*, 953 F.2d 660, 662 (D.C.Cir.1991), *cert. denied*, 503 U.S. 995, 112 S.Ct. 1698, 118 L.Ed.2d 408 (1992); *Scalise v. Thornburgh*, 891 F.2d 640, 649 (7th Cir.1989), *cert. denied*, 494 U.S. 1083, 110 S.Ct. 1815, 108 L.Ed.2d 945 (1990). Nor does the plaintiff have any right to judicial review of the decision under the Administrative Procedures Act. *Bagguley*, 953 F.2d at 661–62; *Scalise*, 891 F.2d at 648–49. Accordingly, any due process claim predicated on such an interest fails to state a claim upon which relief can be granted.

### D. The plaintiff fails to state a cognizable claim under the Equal Protection Clause.

The plaintiff asserts two claims under the Equal Protection Clause. First, he claims that other similarly situated prisoners have been transferred or deported and that the failure to transfer or deport him constitutes a denial of equal protection. Second, the plaintiff claims that the defendants "deliberately denied [him] minimum security facilities, halfway houses and other community programs, including home-confinement, available to United States citizens who committed the same offense, were equally culpable, and received the same sentence." Complaint, Civ.

A. No. 95–1144, at 13. Because the plaintiff fails to allege that the defendants refusal to transfer or deport him was the result of a constitutionally impermissible motive, and because the regulation pursuant to which the plaintiff was denied access to early release programs, BOP Program Statement 5100.05(H), does not facially violate the Equal Protection Clause, and its application to the plaintiff was rationally related to a legitimate governmental interest, the plaintiff fails to state a claim under the Equal Protection Clause with regard thereto.

**1. Because the plaintiff does not allege that the refusal to transfer or deport him was the product of an unconstitutional discriminatory motive, he fails to state a claim under the Equal Protection Clause with respect thereto.**

■ The plaintiff's claim that his equal protection rights were violated when he was allegedly treated differently than other similarly situated prisoners who were either deported or transferred fails to meet either of the necessary predicates for stating a cognizable selective enforcement claim under the Equal Protection Clause. *See Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962); *Brandon v. District of Columbia Bd. of Parole*, 823 F.2d 644, 650 (D.C.Cir.1987) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886)). The plaintiff only baldly asserts that he was treated differently than other prisoners in his circumstances. Further, he does not claim that the allegedly selective enforcement of the provisions regarding deportation or transfer was the result of a constitutionally impermissible motive. Indeed, the articulated justification for the defendants' refusal to transfer or deport him—the plaintiff's prior drug history and continued criminal behavior while in prison—suggest that the defendants' actions had a rational basis. *Cf. Woods v. Edwards*, 51

---

3. Upon the imposition of sentence, federal defendants are remanded to the custody of the BOP (formerly the Attorney General), which designates the place of confinement and may direct the transfer of a prisoner from one penal or correctional facility to another. 18 U.S.C. § 3621(b). The BOP "may designate any available penal or correctional facility that meets minimum standards of health and habitability estab-

lished by the [BOP], whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the [BOP] determines to be appropriate and suitable...." *Id. See United States v. Smith*, 27 F.3d 649, 655 (D.C.Cir.1994) ("The range of factors that the Bureau may consider in its assignments is almost illimitable.").

F.3d 577, 580 (5th Cir.1995) (per curiam) (extended lockdown for nearly four years of prison inmate who was member of racial minority, while similarly situated white prisoners were released, did not violate inmate's equal protection rights, given complete lack of evidence, other than inmate's own personal beliefs, that his extended lockdown was racially motivated; prison officials justified lockdown based on seriousness of inmate's conduct in writing threatening letters to persons outside prison and forging name of another prisoner). As the Court need not accept legal conclusions cast in the form of factual allegations, *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir. 1994), the plaintiff fails to articulate a cognizable claim under the Equal Protection Clause with respect to the defendants' refusal to transfer or deport him.

**2. BOP Program Statement 5100.05(H) does not, on its face, violate the Equal Protection Clause, nor did its application to the plaintiff.**

██ Title 18, Section 3624(c) directs the BOP, to the extent practicable, to make a special community assignment for the last 10 percent of a federal prisoner's sentence. 18 U.S.C. § 3624(c). Given that this provision "focuses on reentry into a community, Congress may not have intended it to apply to deportable aliens at all." *United States v. Smith,* 27 F.3d 649, 654 (D.C.Cir.1994) (citing *United States v. Restrepo,* 999 F.2d 640, 645 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 405, 126 L.Ed.2d 352 (1993)). Indeed, this Circuit has adopted this view. *Id.* Nonetheless, the BOP has taken a different view, extending access to community confinement programs and minimum security facilities to deportable aliens who have a history of strong family or community ties, of domicile in the United States of at least five years, and of stable employment. BOP Program Statement 5100.05(H).

Contrary to the plaintiff's argument, the Program Statement does not discriminate on the basis of a prisoner's national origin, i.e., the country in which a prisoner was born, at all. Rather, it makes a distinction on the basis of a prisoner's alienage, i.e., his or her citizenship.

Moreover, the Program Statement does not categorically deny aliens access to early release programs. Instead, as noted, deportable aliens who meet three criteria are eligible for placement. Thus, while a prisoner's alienage is a threshold consideration, it is not dispositive. Rather, "ineligibility stems primarily from the greater likelihood of escape, so that status as a deportable alien is little more than a proxy for factors the Bureau always considers [in determining eligibility for community corrections programs or minimal security prisons]." *Smith,* 27 F.3d at 655. It is undisputed that the plaintiff fails to satisfy those criteria. Therefore, it cannot be said that either the statute itself or its application to the plaintiff denies him equal protection. *Cf. Prows v. United States Dep't of Justice,* Civ. A. No. 90–2561–LFO, 1992 WL 78769 (D.D.C. April 1, 1992), at *3.

In support of his argument, the plaintiff cites several decisions in which courts have recognized the availability of downward departures from the sentencing guidelines as a means of equalizing deportable aliens and citizen prisoners. For instance, in *Smith,* the Court held that a deportable prisoner's severity of confinement can be a ground for downward departure, but notes that the instances where a departure will be appropriate will be "quite rare" and that

[f]or a departure on such basis to be reasonable the difference in severity must be substantial and the sentencing court must have a high degree of confidence that it will in fact apply for a substantial portion of the defendant's sentence. Finally, as the defendant's status as a deportable alien is by no means necessarily unrelated to his just deserts, even a court confident that the status will lead to worse conditions should depart only when persuaded that the greater severity is undeserved.

*Smith,* 27 F.3d at 655. *Contra United States v. Restrepo,* 999 F.2d 640, 644–47 (2d. Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 405, 126 L.Ed.2d 352 (1993); *United States v. Mendoza–Lopez,* 7 F.3d 1483, 1487 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1552, 128 L.Ed.2d 201 (1994); *United States v.*

*Nnanna,* 7 F.3d 420, 422 (5th Cir.1993); *United States v. Alvarez–Cardenas,* 902 F.2d 734, 737 (9th Cir.1990); *United States v. Vargas,* No. 92 CR 7433, 1995 WL 453021, at *1 (N.D.Ill. July 27, 1995). In any event, assuming *arguendo* that the plaintiff does not stand on equal footing with prisoners who are United States citizens by virtue of his status as a deportable alien, his remedy, if any, lies in the sentencing court.

**E. The defendants are entitled to qualified immunity from claims against them in their individual capacities because the plaintiff fails to establish that he had a clearly established right to be transferred, deported, or placed in an early release program.**

■ Federal officials enjoy qualified immunity from constitutional and statutory claims against them in their individual capacities. *Cleavinger v. Saxner,* 474 U.S. 193, 206, 106 S.Ct. 496, 503, 88 L.Ed.2d 507 (1985). As the Supreme court made clear in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818, 102 S.Ct. at 2738; *see also Hunter v. District of Columbia,* 943 F.2d 69, 75 (D.C.Cir.1991).

"In order for a person to have a clearly established right, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Mahers v. Harper,* 12 F.3d 783, 785 (8th Cir.1993) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. (citation omitted). This analysis "focuses on the objective legal reasonableness of an official's acts." *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739.

Therefore, the Court must decide whether the plaintiff had a clearly established right to be deported, transferred, or enrolled in a community corrections program or placed in minimum security confinement. In light of the Court's conclusion that the plaintiff fails to state a claim upon which relief can be granted with respect thereto, *a fortiori* he fails to demonstrate that the defendants violated any of his "clearly established rights."

**F. Sovereign immunity bars any claims against the United States Department of Justice, the Federal Bureau of Prisons, the Immigration and Naturalization Service, or the individual defendants in their official capacities.**

■ To the extent that the plaintiff seeks damages against the United States or the individual federal defendants in their official capacities, his claims must be dismissed absent a waiver of sovereign immunity. The inherent sovereign immunity of the United States protects it and its agencies from suit absent an express waiver. *See United States v. Nordic Village,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Sovereign immunity also bars suits for money damages against officials in their official capacities absent a specific waiver by the government. *Clark v. Library of Congress,* 750 F.2d 89, 101–02 (D.C.Cir.1984). Because the Court cannot discern from the plaintiff's Complaint any colorable basis for such a waiver, to the extent the plaintiff asserts any claims for damages against the United States Department of Justice, the United States Bureau of Prisons, or the federal defendants in their official capacities, such claims must be dismissed for lack of subject matter jurisdiction.

### III. Conclusion.

Upon careful consideration of the parties' pleadings, the entire record herein, and the applicable law with respect thereto, the Court will enter an Order of even date herewith consistent with the foregoing Memorandum Opinion GRANTING the Defendants' Motion to Dismiss.