UNITED STATES of America, Plaintiff–Appellee,

v.

James Richard BURTON, Defendant–Appellant.

No. 88–5508.

United States Court of Appeals, Sixth Circuit.

Argued April 20, 1989.

Decided Jan. 17, 1990.

Rehearing Denied March 22, 1990.

Terry Cushing (argued), C. Cleveland Gambill, Asst. U.S. Atty., Louisville, Ky., for U.S., plaintiff-appellee.

Stephen L. Hixson (argued), Bowling Green, Ky., Donald M. Heavrin, Louisville, Ky., for James Richard Burton, defendant-appellant.

Before: JONES, Circuit Judge, ENGEL, Senior Circuit Judge *, and WOODS,** District Judge.

ENGEL, Senior Circuit Judge.

James Burton appeals his jury conviction and sentence in the United States District Court for the Western District of Kentucky for three counts of simple possession of marijuana in violation of 21 U.S.C. § 844. He was sentenced to one year for each count to be served concurrently. For the reasons stated below, we affirm.

Burton moved to a landlocked farm in Warren County, Kentucky in 1980. The farm is remote and fenced in with locked gates and "No Trespassing" signs all around it. Acting on information that Burton was cultivating marijuana, but without obtaining a search warrant, the Kentucky State Police went to Burton's farm on July 7, 1987. To gain access, the officers climbed over a fence and approached an area surrounded by another fence with a locked gate, which they also traversed. They discovered several marijuana plants in black pots on the property. They then proceeded to Burton's home, arrested him and advised him of his rights. A search warrant was obtained for the property and more plants were discovered in the barn in an area set up for growing marijuana. Processed marijuana was found in the house and several firearms were discovered. Burton was charged in a four count indictment with three counts of unlawfully manufacturing and possessing marijuana with intent to distribute and one count of using firearms in connection with the commission of a drug trafficking offense.

---

\* The Honorable Albert J. Engel became Senior Circuit Judge effective October 1, 1989.

\*\* Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation.

During the voir dire of the jury, the defense asked that the jury be advised of the maximum penalties for the charged offenses. The court refused to give the instruction. Later the prosecution asked if anyone on the jury thought that the penalties for drug-related offenses were too strict or too lenient. Seven potential jurors opined that the laws were too lenient. The court refused to excuse the seven persons upon the defense's request, but only after the jury indicated that it would follow the law as given without regard to their personal beliefs.[1]

At the trial the government presented its case of possession with intent to distribute. The defense proceeded with a theory of medical necessity—Burton suffers from glaucoma and he claims that he raised and used the marijuana to relieve the symptoms of the illness. The jury began deliberations during the afternoon of May 3, 1988 and deliberated until after midnight. They reached a verdict at 1:50 a.m.

The jury found Burton innocent on the felony charges in all four counts but found him guilty of the lesser included offense of simple possession of marijuana on three counts. He was sentenced to one year for each count to run concurrently. It is this conviction and sentence that Burton now appeals. On appeal, Burton contends first that the entry by the Kentucky State Police Officers onto his land without a warrant to find the marijuana was in violation of the Fourth Amendment. Next he contends that the trial court abused its discretion by refusing to excuse the seven jurors at voir dire who opined that the current drug laws are too lenient; and by keeping the jury until after 1:30 a.m. He also claims that the verdict was inconsistent with the evidence, that marijuana is incorrectly classified as a Schedule I drug, and that counts 2 and 3 were really only one count. Finally, he claims that the penalty for simple possession violates the equal protection and due process clauses as well as the Eighth Amendment.

I.

"[T]he special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields." *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924). In 1984, the Supreme Court reaffirmed *Hester* in *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). In *Oliver*, narcotics officers of the Kentucky State Police entered the property of the defendant by going around a locked gate and ignoring "No Trespassing" signs. They found a field of marijuana and the property owner was arrested for manufacturing a controlled substance. The Supreme Court determined that the search was constitutionally valid even though no search warrant had been obtained because the defendant had no reasonable expectation of privacy in the open fields around his home despite his attempts to protect his privacy such as erecting fences and posting "No Trespassing" signs.

Burton claims that the search by the Kentucky State Police went beyond the scope of *Oliver* and that the search here was constitutionally invalid. However, the facts of this case hardly appear to distinguish it from *Oliver*. Both cases involved the Kentucky State Police. There were "No Trespassing" signs posted and fences around the land that was searched. In *Oliver*, the Court rejected the contention that such actions created a protected privacy interest in the field within the terms of the Fourth Amendment. Specifically, the Court stated "we reject the suggestion that steps taken to protect privacy establish that expectations of privacy in an open field are legitimate." *Id.* at 182, 104 S.Ct. at 1743.

The only difference between the cases is that here the police climbed over a fence and a locked gate, whereas in *Oliver*, the officers went around a locked gate. Given the cited language from *Oliver* it is evident

---

1. Only one of the seven who voiced his opinion regarding the penalties for drug-related offenses actually served on the jury.

that this distinction is not of constitutional significance. The same is true of Burton's claim that the police entry onto his land constituted a trespass under Kentucky State law. The Supreme Court, in *Oliver*, addressed this issue, in the identical context of Kentucky law, observing "in the case of open fields, the general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment." *Id.* at 183–84, 104 S.Ct. at 1743–44.

 Burton also urges us to examine open field searches on a case-by-case basis to determine whether the landowner sufficiently established a reasonable expectation of privacy in his land, a practice expressly rejected in *Oliver*. Holding that such a practice "creates a danger that constitutional rights will be arbitrarily and inequitably enforced," *id.* 181–82, 104 S.Ct. at 1742–43, the Court determined "that an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers." *Id.* at 181, 104 S.Ct. at 1742.

The facts of this case are not distinguishable from those in *Oliver* and mandate a similar result.

## II.

Burton, who suffers from glaucoma, succeeded in persuading the trial court to permit him to offer in his defense a claim that he was growing, possessing and using marijuana as a matter of medical necessity. He introduced evidence of some medical opinion that the substance alleviates this condition. He further prevailed upon the trial court to give a "medical necessity" instruction to the jury. He now claims that under the proof the jury's verdict of guilty of simple possession while acquitting him of the more serious charges of manufacturing and of possession with intent to distribute is incorrect and cannot stand. We disagree.

Medical necessity has been recognized by some courts and by some authority. *See*

*e.g., United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980); *United States v. Randall*, 104 Wash.D.C.Rep. 2249 (D.C.Super.1976). In *Bailey*, the Supreme Court determined that if such a defense existed, defendant Bailey had failed to establish it as a legal justification for prison escape because he failed to show that escape was the only available alternative. Rather, there were other legal methods available for improving jail conditions which Bailey failed to utilize. *See generally*, LaFave & Scott, *Substantive Criminal Law* § 5.4.

 Basically, the defense involves a weighing process by the court of the harm avoided by the defendant by his breaking the law and the harm done by breaking the law. Other requirements are that the defendant not have brought the initial harm upon himself, the danger must be imminent and "there must be no reasonable legal alternative to violating the law." *Id.*

 We expressly decline to hold that such a defense was available here. Following *United States v. Randall, supra*, a government program was established to study the effects of marijuana on glaucoma sufferers, as Burton admitted at trial.[2] Thus a reasonable legal alternative existed for Burton which he failed to utilize. Given the large quantity of marijuana produced without government sanction and the availability of lawful treatment, Burton's defense in all events borders on the incredible. Burton benefited at least as much, if not more, from the claim of medical necessity than he was entitled to. A reasonable jury could have found him guilty of simple possession upon the facts of this case and this one did. If sympathy persuaded it not to find him guilty of the more serious charges, it did not compel it to acquit him of the lesser.

## III.

 The remaining issues warrant little attention. There is no basis for reversing the jury verdict where deliberations contin-

---

**2.** Notably, after this proceeding was begun, Burton became a part of this program and now

receives marijuana for his glaucoma under a physician's supervision.

ued until 1:50 a.m. The judge was clearly acting within his discretion by allowing them to continue where they appeared to be making progress and there were no complaints of weariness.

■ Regarding the defendant's claim that this court should reclassify marijuana out of the Schedule I category, "our inquiry is limited to the question of whether classification ... is irrational or unreasonable." *United States v. Whitley*, 734 F.2d 1129, 1141 (6th Cir.1984). There has been no such showing here. Further, it has repeatedly been determined, and correctly so, that reclassification is clearly a task for the legislature and the attorney general and not a judicial one. *See U.S. v. Greene*, 892 F.2d 453 (6th Cir.1989); *United States v. Wables*, 731 F.2d 440, 450 (7th Cir.1984); *United States v. Middleton*, 690 F.2d 820, 823 (11th Cir.1982).[3] A similar conclusion may be reached regarding defendant's claim that the penalty for simple possession violates various constitutional protections. There is no basis for this argument since marijuana is presently classified as a Schedule I substance and the penalties for possession of such drugs have been rationally and thoughtfully established by Congress. Thus this argument as well should be made to the legislature, not to the courts.

■ Burton also argued that counts 2 and 3 constituted only one offense. Count 2 concerned 138 marijuana plants found in Burton's barn. Count 3 concerned two pounds of processed marijuana found in his home. Both counts charge Burton with unlawful manufacture and possession with intent to distribute marijuana. He was found guilty of simple possession under both counts. It is clear that counts 2 and 3 involved different forms and amounts of marijuana which were discovered in different locations. Therefore counts 2 and 3 involved separate offenses.

■ Finally, there was no abuse of discretion by the trial court in failing to dismiss the seven potential jurors for their opinion that present penalties for drug-related offenses are too lenient. A trial court has broad discretion in ruling on challenges for bias. *Dennis v. United States*, 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734 (1950). There has been no showing of actual bias here and the trial judge adequately questioned the members of the jury to determine whether they would follow the law despite any personal beliefs. Therefore we find that there was no abuse of discretion by the trial judge.

For the reasons stated above we AFFIRM.

NATHANIEL R. JONES, Circuit Judge, concurring.

Although I believe the search conducted in this case was more intrusive than the search conducted in *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), I agree with the majority's conclusion that the district court's judgment should be affirmed. However, while the officers in this case and in *Oliver* both ignored "No Trespassing" signs while conducting an open fields search, I am unable to agree with the majority's conclusion that the actions taken by the police in this case are indistinguishable from the officers' acts in *Oliver*.

When the officers in *Oliver* arrived at Oliver's farm, they saw a locked gate which had a "No Trespassing" sign attached to it. Next to the fence, however, was a "footpath [which] led around one side of the gate." 466 U.S. at 173, 104 S.Ct. at 1738. The officers "walked around the gate and along the road" and then discovered a field of marijuana on Oliver's farm. *Id.* In the instant case, the officers climbed over two fences before reaching a path which ultimately led to Burton's marijuana plants. Although the *Oliver* Court stressed that the common law of trespass has little relevance to the search and seizure issues raised by the Fourth Amendment to the United States Constitution, the

---

**3.** The legislature and appropriate federal agencies are currently engaged in reexamining the classification of marijuana and it would be un- precedented for the Sixth Circuit to preempt Congress in this area.

 

type of police activity conducted in the instant case unnecessarily invites a potentially dangerous response by a landowner. Consequently, although the search conducted in this case may be constitutional, police should refrain from performing these types of searches because they create a risk of serious injury to undercover police officers. It is not unlikely that a fence-climbing undercover officer, mistaken by the landowner for an ordinary trespasser, will find himself staring down the barrel of the landowner's shotgun.