**Kiyoshi KUROMIYA, et al., Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**No. CIV. A. 98–3439.**

United States District Court,
E.D. Pennsylvania.

March 10, 1999.

Lawrence Elliott Hirsch, Hirsch and Caplan Public Interest Law Firm, Philadelphia, PA, for plaintiffs.

Arthur R. Goldberg, Dept. of Justice, Washington, DC, Gail F. Levine, Dept. of Justice, Civil Div., Washington, DC, Karyn A. Temple, U.S. Dept. of Justice, Washington, DC, Daniel Dormont, Office of Chief Counsel Drug Enforcement Admin., Washington, DC, for defendant.

## *MEMORANDUM & ORDER*

KATZ, Senior District Judge.

The law does not permit the use of marijuana to treat a variety of ailments

ranging from glaucoma to AIDS from which the plaintiffs claim they suffer and for which marijuana relieves symptoms. Yet, according to the complaint and the representations of the government's attorney at a hearing, *see* Tr. of Hr'g on Mot. to Dismiss at 7–8, the government itself provides marijuana to another group of persons suffering illnesses, through their physicians. Plaintiffs now mount a constitutional challenge to the laws that prohibit therapeutic marijuana. This court concludes that the laws are constitutional. However, the court cannot reach the same conclusion as to the equal protection issues arising from the distinction between those who may and may not legally use medicinal marijuana, as to which the test is whether the government's distinction is rational. The answer must come from facts, not the abstractions and dogma presently in the record.

Before the court now is the government's motion to dismiss or, in the alternative, to strike the plaintiffs' second amended complaint. In addition, plaintiffs have submitted what is titled a motion for summary judgment, and the government has filed a responsive motion seeking to strike the opposition to the motion to strike.

## I. The Complaint

The government correctly states that the complaint in this case is exceedingly long: it numbers 178 pages and includes narrative descriptions of each of the 170 named plaintiffs in the case. However, the gist of the complaint is found in the concluding fifteen pages in which the occasionally oblique legal claims are found. After discussion of the historical uses of marijuana and allegations regarding recent research and therapies utilizing the plant, *see* Compl. ¶¶ 171–78, the plaintiffs focus on "marijuana prohibition" and outline the Controlled Substance Act (CSA), 21 U.S.C. § 801 *et seq.*, the statutory scheme by which virtually all uses of marijuana are prohibited. *See* ¶¶ 179–87.

The plaintiffs next discuss two "exceptions" to the prohibition on marijuana. First, plaintiffs state that in 1978 the federal government settled a lawsuit by which it provided Robert Randall, the plaintiff in that case, with FDA-approved and medically supervised access to government-grown marijuana to control his glaucoma.[1] The plaintiffs allege that the government eventually expanded this compassionate use program[2] to cover a small number of other individuals who were also supplied with marijuana for medical needs after they complied with various application procedures not related to the settlement. The program stopped taking new participants in 1992, *see* Compl. ¶¶ 188–93, and, according to plaintiffs, only eight individuals still receive marijuana. *See id.* ¶ 195.[3] The complaint states that three of the

---

[1]. The government has provided a copy of the settlement papers of the civil matter that apparently led to the establishment of the wider program. *See* Mot. to Dismiss, Ex. 2. Mr. Randall was also involved in an earlier criminal case, *United States v. Randall,* 104 Wash. D.L. Rep. 2249 (Dec. 28, 1976), in which the D.C. Superior Court dismissed marijuana-related charges against Mr. Randall based on the necessity defense.

[2]. The proper term for this program is unsettled, but the court will hereafter refer to the program by which some individuals receive government-supplied marijuana as the "compassionate use program." There appears to be no case law on the program, but the court does note that in *United States v. Burton,* 894 F.2d 188 (6th Cir.1990), the Sixth Circuit rejected an appeal of a conviction for marijuana possession. Commenting on the defendant's assertion of medical necessity, the court "expressly decline[d]" to find such a defense available, stating that "[f]ollowing *United States v. Randall,* a government program was established to study the effects of marijuana on glaucoma sufferers.... Thus a reasonable legal alternative existed for Burton which he failed to utilize." *Id.* at 191 (citations omitted).

[3]. During the hearing on the government's motion to dismiss, the government asserted that only five people still receive marijuana through the program. The court assumes for purposes of this motion that plaintiffs' number is correct.

plaintiffs, Ladd Huffman, Jackie Rickert, and Ron Shaw, had their applications to the program approved but subsequently were denied marijuana supplies because of the government's decision to stop admitting new participants. *See id.* ¶ 194.[4] The second exception to the general prohibition alleged by the plaintiffs is the government's approval of the drug Marinol, which contains a synthetic version of THC, the active ingredient in marijuana. *See id.* ¶¶ 198–205. Plaintiffs suggest that these "exceptions" violate the equal protection clause by creating arbitrary distinctions between different types of drugs and between different people. *See id.* ¶¶ 196–97 (discussing compassionate use exception); ¶ 202 (stating that permitting synthetic THC but banning natural THC is arbitrary).

Plaintiffs then proceed to their other constitutional claims. They argue first that Congress exceeded its power under the commerce clause by enacting federal criminal laws prohibiting marijuana. *See id.* ¶¶ 207, 209. In subsequent paragraphs, although they do not explicitly say so, the plaintiffs imply that the criminalization of marijuana violates both the fundamental right and suspect class prongs of equal protection. *See id.* ¶ 211 ("Total prohibition of marijuana/cannabis has deprived this class of the fundamental liberty and property rights which are their birthrights."). They also suggest that this is a violation of the Ninth and Tenth Amendments. *See id.* ¶ 207. Plaintiffs then allege that denying individuals the rights to select their own medical treatment violates the right of privacy. *See id.* ¶ 213. The remaining portion of the complaint discusses the federal government's hostile response to the California referendum in which the use of medical marijuana was approved in certain situations. *See id.* ¶¶ 215–17. Ultimately, plaintiffs request declaratory and injunctive relief "to stop

enforcement of the marijuana provisions of [the Controlled Substance Act]." *Id.* at Prayer for Relief.

The court will address each of these issues.

## II. The Motion to Dismiss

The court has no difficulty in determining that the plaintiffs cannot succeed on their claims pertaining to the commerce clause, the Ninth Amendment, the Tenth Amendment, the right to privacy, or, in general, the equal protection clause. Numerous cases have held that under the rational review applied to such legislative actions, the CSA easily passes constitutional muster, and this court agrees with the reasoning in those decisions. However, it is premature to dismiss the plaintiffs' equal protection claims regarding access to the compassionate use program by which marijuana is distributed to select individuals, and the motion to dismiss will be denied as to that allegation.

### A. Rule 12(b)(6) Standards

A motion to dismiss pursuant to Rule 12(b)(6) should be granted when there is a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In evaluating a motion to dismiss for failure to state a claim, the court must determine whether "under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief" and the court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996); *see also Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993). In ruling, the court may consider the complaint, public records, exhibits, and documents central to the complaint. *See, e.g., Slater v. Marshall*, 915 F.Supp. 721, 723 (E.D.Pa.1996).

---

4. According to the complaint, Ms. Rickert has Ehlers–Danlos Syndrome, which "causes recurrent and extremely painful dislocation of most of the joints of the body," Compl. ¶ 129; Mr. Huffman has Multiple Sclerosis, *see id.* ¶ 62; and Mr. Shaw suffers from Post–Polio Syndrome. *See id.* ¶ 140.

The court should not inquire as to whether the plaintiffs would ultimately prevail but only whether they are entitled to offer evidence to support their claims. *See Nami*, 82 F.3d at 65. A motion to dismiss should be granted only if the "plaintiffs could prove no set of facts that would entitle them to relief." *Id.; see also Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). Granting a motion to dismiss is a disposition on the merits, and, as this is a disfavored method by which to dispose of a case, the burden is on the moving party to show that no facts could permit plaintiffs' claim to prevail. *See Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir.1980).

### B. The Statutory and Regulatory Framework

Substances that are deemed hazardous by the federal government are placed into one of five schedules. Marijuana was placed in Schedule I, which means that it has "a high potential for abuse," that there is "no currently accepted medical use in treatment in the United States," and that there is "a lack of accepted safety for use of the drug or other substance under medical supervision." 21 U.S.C. § 812(b)(1); *see also* 21 U.S.C. § 812 Schedule I(c)(10) (placing marijuana in Schedule I). Marijuana is included in the federal laws crimi-

nalizing distribution and possession with intent to distribute of controlled substances. *See, e.g.,* 21 U.S.C. § 841(b)(1)(D). There are specific penalties for individuals who "distribut[e] a small amount of marijuana for no remuneration," *see* 21 U.S.C. §§ 841(b)(4), 844, 844a (establishing lesser penalties, including civil penalties, for simple possession), but it is undeniable that marijuana possession, distribution, and cultivation, etc., are illegal in virtually every context.[5]

### C. Plaintiff's Claims

Plaintiffs claim to be challenging the Controlled Substance Act in all aspects as it pertains to marijuana. The court construes this to be a challenge, *inter alia*, to 21 U.S.C. §§ 841, 844, 846, and all related provisions, such as 21 U.S.C. § 860, that could be invoked by possession, distribution, or growing of marijuana. The court will not examine each specific provision in the Act and address it; rather, as suggested by the plaintiffs, defendant, and other courts, this court will consider the CSA as a whole. Plaintiffs separately raise equal protection challenges to the policies for access to the compassionate use program and to the treatment of Marinol, and they will accordingly be considered separately. The plaintiffs did not file any answer specifically addressing the claims in the mo-

---

**5.** There are provisions by which the Attorney General may change the designation of a particular controlled substance, either to move it up, down, or off of the schedules. *See* 21 U.S.C. § 811. The statute provides for consideration of certain factors, e.g., the risk to public health of decriminalization, prior to the rescheduling of a controlled substance. *See* 21 U.S.C. § 811(b), (c). Pursuant to administrative regulations, individuals may petition the Attorney General or her designated representative for rescheduling of a particular controlled substance. *See* 21 C.F.R. § 1308.43 *et seq.* The court notes that plaintiffs' complaint does not challenge the legitimacy of these provisions for altering the schedule of a drug and does not suggest that the plaintiffs have attempted to alter the categorization of marijuana by this process.

An attempt to reschedule marijuana was the subject of extensive litigation in the D.C.

Circuit. *See NORML v. Ingersoll*, 497 F.2d 654 (D.C.Cir.1974); *NORML, Etc. v. DEA*, 559 F.2d 735 (D.C.Cir.1977); *Alliance for Cannabis Therapeutics v. DEA*, 930 F.2d 936 (D.C.Cir.1991); *Alliance for Cannabis Therapeutics v. DEA*, 15 F.3d 1131 (D.C.Cir.1994). In the last stage of that litigation, the D.C. Circuit rejected a challenge to an administrative procedure that refused to reschedule marijuana after testimony on the subject. *See Alliance for Cannabis Therapeutics*, 15 F.3d at 1136–37. Specifically, the D.C. Circuit found that the administrative ruling did not demonstrate bias and that the administrator reasonably relied more heavily on the opinions of experts than on those of lay people and doctors in concluding that marijuana should not be rescheduled. *See id.; see also* Denial of Marijuana Scheduling Petition, Remand, 57 Fed.Reg. 10,499 (D.E.A. March 26, 1992).

tion to dismiss; the only response was an argument that the court ought to consider this motion to be one for summary judgment.

### 1. Commerce Clause Challenges

█ Plaintiffs argue that the CSA, at least as applied to marijuana, is an illegitimate exercise of Congress' powers under the commerce clause. *See* 21 U.S.C. § 801 (justifying federal regulation pursuant to the commerce clause). The government's motion argues that the court must dismiss this claim because it is well-settled that the CSA is a valid exercise of congressional power. *See* Mot. to Dismiss at 7. The court agrees with the government.

The Supreme Court has explained that Congress may exercise its powers under the commerce clause in three ways: 1) it may regulate the use of channels of interstate commerce; 2) it may regulate and protect "instrumentalities" of interstate commerce or people or things in interstate commerce even when the possible harm comes from intrastate actions; and 3) Congress may "regulate those activities having a substantial relation to interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The Third Circuit, along with many other courts, has recognized the interstate nature of the market in illegal drugs and has held that Congress may regulate that market in the same way that it may regulate foods and drugs that are legal. *See United States v. Orozco*, 98 F.3d 105, 106–07 (3d Cir.1996). When it passed the statute regulating and criminalizing drugs, including marijuana, Congress

specifically included findings that "drug trafficking affected interstate commerce." *See id.; see also* 21 U.S.C. § 801 (detailing congressional findings regarding the interstate nature of drug trade).[6] This court, then, like many before it, has no difficulty in ruling that marijuana trafficking, whether legal or illegal, falls within the commerce clause because of its inherently commercial and interstate nature.

The specific holding in *Lopez* does not alter this assessment.[7] To this court's knowledge, every court that has considered this issue since *Lopez* has affirmed the legitimacy of the CSA as a rational exercise of congressional power under the commerce clause. *See, e.g., United States v. Jackson*, 111 F.3d 101, 102 (11th Cir. 1997) (upholding 21 U.S.C. § 860(a) and stating that "[t]he illegal possession and sale of drugs affects interstate commerce and Congress accordingly has authority under the Commerce Clause to criminalize and punish drug-related activity"), *cert. denied*, — U.S. —, 118 S.Ct. 200, 139 L.Ed.2d 137 (1997); *Proyect v. United States*, 101 F.3d 11, 13–14 (2d Cir.1996) (contrasting CSA provision criminalizing marijuana manufacture with *Lopez* statute and upholding it under the commerce clause); *United States v. Tisor*, 96 F.3d 370, 374–76 (9th Cir.1996) (upholding various provisions of the CSA and distinguishing them from *Lopez* statute; holding that intrastate marijuana conspiracies fall under federal jurisdiction because of "substantial effect" on interstate commerce), *cert. denied*, 519 U.S. 1140, 117 S.Ct. 1012, 136 L.Ed.2d 889 (1997); *United States v. Tucker*, 90 F.3d 1135, 1140–41 (6th Cir.

**6.** Specifically, Congress found that "[i]ncidents of the traffic [in controlled substances] which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce." 21 U.S.C. § 801(3).

**7.** *Lopez* rejected the Gun–Free School Zones of Act of 1990, which forbade any individual from knowingly possessing a firearm at a place that he or she knew to be a school zone,

because it did not meet the minimal standards for exercise of federal power under the commerce clause: it did not have a jurisdictional requirement that the gun have traveled in interstate commerce, it did not require that any commercial activity have occurred, and there were no congressional findings that would have assisted the Court in determining the acceptability of Congress' inferences. *See Lopez*, 514 U.S. at 561–68, 115 S.Ct. 1624 (discussing deficiencies in statute).

1996) (upholding 21 U.S.C. § 860 and emphasizing that drug trafficking inherently invokes federal jurisdiction pursuant to the commerce clause; noting that all circuits to consider the issue post-*Lopez* have upheld the CSA); *United States v. Lerebours*, 87 F.3d 582, 583–85 (1st Cir.1996) (rejecting *Lopez* challenge to CSA and stressing that "de minimis" individual cases under a given statute do not affect jurisdiction), *cert. denied*, —— U.S. ——, 117 S.Ct. 694, 136 L.Ed.2d 617 (1997). The analysis in these and other cases provides support for this court's holding that the CSA, specifically as it pertains to marijuana, has a connection with interstate commerce sufficient to invoke federal power.

This conclusion would be no different even if plaintiffs could demonstrate the marijuana in individual cases did not travel across state lines. As the Third Circuit explained in interpreting the carjacking statute, 18 U.S.C. § 2119, when analyzing congressional action in such areas, it is not the court's job to "second-guess the legislative judgment" of Congress that a given activity affects interstate commerce, "but rather to ensure that Congress had a rational basis for that conclusion." *United States v. Bishop*, 66 F.3d 569, 577 (3d Cir.1995). Most recently, in *Orozco*, the Third Circuit upheld 21 U.S.C. § 860, which criminalizes the distribution of drugs within one thousand feet of a school. In so doing, the Third Circuit discussed *Lopez* and stressed the distinctions between the statute at issue in that case and in *Orozco*:

> We have no difficulty here in finding that the sale of 1080 grams of cocaine within one thousand feet of a school zone is an activity which "substantially affects interstate commerce." In so holding, we recognize that the Drug–Free School Zones Act directly regulates commerce in illegal drugs.
>
> A large interstate market exists for illegal drugs. Congress has the power to regulate that market just as it

has the power to regulate food and drugs in general. Moreover, when Congress enacted the Comprehensive Drug Abuse Prevention and Control Act of 1970 (of which 21 U.S.C. § 860 is a part), Congress expressly found that trafficking affected interstate commerce.

> We do not find *Lopez* helpful to appellant. The Gun–Free School Zones Act and the Drug–Free School Zones Act are distinguishable. [The statute at issue in *Lopez* ] punished mere possession of a firearm near a school. In contrast, 21 U.S.C. § 860 prohibits the sale, distribution and possession with intent to distribute illegal drugs near a school. Drug trafficking is an inherently commercial activity; the mere possession of a firearm is not.

98 F.3d at 107 (citations, internal punctuation omitted).

Congress's findings that intrastate drug activities have a substantial effect on interstate commerce have been repeatedly upheld by other courts and are certainly sufficient to establish a rational nexus for federal jurisdiction of these matters. *See* 21 U.S.C. § 801(4)-(6) (finding that local distribution, possession, and manufacture of controlled substances affect interstate commerce); *see also United States v. Walker*, 142 F.3d 103, 111 (2d Cir.1998) (rejecting invitation to invalidate portions of CSA and related statutes post-*Lopez* because of specific findings by congress), *cert. denied*, —— U.S. ——, 119 S.Ct. 219, 142 L.Ed.2d 181 (1998); *Proyect*, 101 F.3d at 13 (holding that intrastate use of marijuana invokes federal commerce clause jurisdiction and citing other jurisdictions so holding); *United States v. Visman*, 919 F.2d 1390, 1392–93 (9th Cir.1990) (upholding convictions for marijuana violations of the CSA and emphasizing that the "Supreme Court has instructed that Congress may regulate those wholly intrastate activities which have an effect upon interstate commerce").

Upon examining this case law, this court cannot hold that the CSA is an illegitimate exercise of congressional authority.[8]

## 2. Ninth and Tenth Amendments

The court also understands the plaintiffs' challenges to the CSA under the Ninth and Tenth Amendments to stem from their view of the limits of federal power: "Federal criminalization of marijuana in The Controlled Substance Act was beyond the power of Congress to enact. The definition and prosecution of local, intrastate crime are reserved to the States under the Ninth and Tenth Amendments." Compl. ¶ 207.

■ Ignoring the government's claim that the plaintiffs have no standing to bring the Tenth Amendment claim,[9] the plaintiffs' claim is meritless. The Tenth Amendment states that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively." U.S. Const. amend. X. However, so long as the passage of a federal criminal statute is a valid exercise of congressional commerce power, no violation of the Tenth Amendment occurs. *See, e.g., United States v. Lerebours,* 87 F.3d 582, 585 (1st Cir.1996); *United States v. Owens,* 996 F.2d 59, 61 (5th Cir.1993); *see also United States v. Maas,* 551 F.Supp. 645, 647 (D.N.J.1982) ("In determining that the rational basis test is the correct one to use to test this legislation, it is unnecessary to determine whether there is any protection under the Ninth and Tenth Amendments for possession of marijuana"); *Bishop,* 66 F.3d at 584–85 (stating that a plaintiff may not challenge federal criminal laws as intruding in the state police powers so long as it is an activity rationally believed to be "one of the conduits of a national and international pipeline of illegal activity").

■ The Ninth Amendment claim must likewise be dismissed. That Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The fundamental problem with the plaintiffs' argument is that the "the Ninth Amendment has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation." *San Diego County Gun Rights v. Reno,* 98 F.3d 1121, 1125 (9th Cir.1996) (citations, internal punctuation omitted). Rather, the Ninth Amendment may be applied only as a rule of construction to other constitutional provisions. *See, e.g., Gibson v. Matthews,* 926 F.2d 532, 537 (6th Cir.1991); *Marshall v. Reno,* 915 F.Supp. 426, 428 (D.D.C.1996). Although the court will discuss this matter in more detail below, as there is no constitutional provision by which one can discern a fundamental right to possess, use, grow, or sell marijuana, *see, e.g., Maas,* 551 F.Supp. at 646; *NORML v. Bell,* 488 F.Supp. 123, 132 (D.D.C.1980); *United States v. Bergdoll,* 412 F.Supp. 1308, 1313 (D.Del.1976), it is equally untenable to claim that there is a Ninth Amendment right violated by its criminalization.

## 3. Privacy Challenges

Plaintiffs imply that there is a privacy right either to use marijuana generally or, more particularly, to use it for medical purposes. As the above discussion of the Ninth Amendment challenge suggested, plaintiffs' claims that the right to privacy requires that the CSA be overturned have no merit.

■ The Supreme Court has recognized a penumbral right to privacy in the

---

8. The conclusion that Congress may regulate drugs under the commerce clause disposes of the plaintiffs' argument that Congress needed to pass a constitutional amendment equivalent to the Eighteenth Amendment to regulate traffic in drugs. *See* Compl. ¶¶ 208–09.

9. The matter is not thoroughly briefed and would require factual determinations by the court for resolution.

United States Constitution, but this constitutional protection includes only those "personal rights that can be deemed fundamental or implicit in the concept of ordered liberty." *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (citations, internal punctuation omitted); *see also Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir.1997) (commenting that only most intimate rights are protected). In determining whether or not a right is fundamental, a court must decide whether a right is explicitly or implicitly guaranteed by the Constitution, but a court should not " 'pick out particular human activities, characterize them as fundamental, and give them added protection.' " *NORML v. Bell*, 488 F.Supp. 123, 132 (D.D.C.1980), *quoting Shapiro v. Thompson*, 394 U.S. 618, 642, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). If the right in question is fundamental, the state must show a compelling interest in the regulation; if the right is not fundamental, the regulation must pass only rational basis review. *See Alexander*, 114 F.3d at 1403.

■ Another district court explained these issues in the context of a very similar challenge by the National Organization for the Reform of Marijuana Laws (NORML):

> NORML argues that this right of privacy in general and privacy in the home forbids any governmental ban on private possession and use of marijuana. Such a reading stretches the right of privacy too far. This right exists only in conjunction with specific constitutional guarantees that serve as the substantive basis for the privacy right. The recognized substantive rights are " 'fundamental' or 'implicit in the concept of ordered liberty,' " and "the activities detailed as being within this definition ... relat[e] to marriage, procreation, contraception, family relationships, and child rearing and education."
>
> Smoking marijuana does not qualify as a fundamental right.

*NORML*, 488 F.Supp. at 132 (citations, internal punctuation omitted); *see also United States v. Fogarty*, 692 F.2d 542, 547 (8th Cir.1982) (holding that possessing, selling, and importing marijuana are not fundamental rights and collecting other cases so holding); *United States v. Fry*, 787 F.2d 903 (4th Cir.1986) (holding that there is no fundamental right to produce or cultivate marijuana commercially); *United States v. Maas*, 551 F.Supp. 645, 647–48 (D.N.J.1982) (same). "Smoking marijuana receives no explicit or implicit constitutional protection. The act of smoking does not involve the important values inherent in questions concerning marriage, procreation, or child rearing." *NORML*, 488 F.Supp. at 132. In making this determination, this court acts in accordance with that of numerous other courts so deciding. *See, e.g., id.* at 134 n. 28 (collecting cases so holding); *Maas*, 551 F.Supp. at 646–48 (agreeing with *NORML v. Bell*); *United States v. Maiden*, 355 F.Supp. 743, 746–47 (D.Conn.1973) (distinguishing cases protecting specific aspects of privacy and rejecting its application to marijuana possession and distribution).

■ Moreover, there is no fundamental right of privacy to select one's medical treatment without regard to criminal laws, and courts have consequently applied only rational review to regulations affecting these matters. The Third Circuit explicitly so held in *Sammon v. New Jersey Board of Medical Examiners*, 66 F.3d 639, 645 (3d Cir.1995), which, under rational basis review, rejected a constitutional challenge to a New Jersey law pertaining to midwifery. "In the absence of extraordinary circumstances, state restrictions on a patient's choice of a particular treatment also have been found to warrant only rational basis review." *Id.* at n. 10; *see also Mitchell v. Clayton*, 995 F.2d 772, 775–76 (7th Cir.1993) (holding that there is no constitutional right to obtain a particular type of treatment; citing other cases so holding); *Carnohan v. United States*, 616 F.2d 1120, 1122 (9th Cir.1980) (stating that "[c]onstitutional rights of privacy and per-

sonal liberty do not give individuals the right to obtain laetrile free of the lawful exercise of government police power").[10] The Washington Supreme Court recently decided a question virtually identical in *Seeley v. Washington*, 132 Wash.2d 776, 940 P.2d 604, 612 (1997), and that court rejected an invitation to apply a heightened level of scrutiny to the claim that there was a specific privacy right by which one could treat oneself with medical marijuana. *See id.* at 614–19.

■ As there is no fundamental right to use marijuana in any context, the government does not have to demonstrate a compelling state interest to regulate marijuana; rather, the "constitutionality of the legislation will be upheld if there is a rational basis to support it." *Maas,* 551 F.Supp. at 647. The court cannot say that Congress did not have a "rational" basis for including marijuana within the provisions of the CSA. The ongoing dispute regarding the safety and usefulness of marijuana, both as a medical aid and otherwise, supports the rationality of the Act. *See, e.g., Fogarty,* 692 F.2d at 547–48; *Fry,* 787 F.2d at 905; *Maas,* 551 F.Supp. at 648; *NORML,* 488 F.Supp. at 128–30, 136, 139–40. In *Maas,* Judge Sarokin correctly pointed out that, given the continuing dispute regarding marijuana, it was not necessary to permit the petitioners in that case to present evidence on the matter, as such evidence would only demonstrate the conflict and hence the "rationality" of the government's decision. *See id.* More specifically, the Washington court in *Seeley* held that these same quarrels over the efficacy and safety of marijuana were a sufficient reason to hold that the prohibition on medical marijuana was also rational. *See* 940 P.2d at 604.

This holding is strengthened by Congress's specific recognition of the debates regarding the safety and utility of marijua-

na when it passed laws regulating it. *See, e.g., United States v. Middleton,* 690 F.2d 820, 823 (11th Cir.1982) (citing to H.R.Rep. No. 91–1444, 91st Cong., 21st Sess. 12, 1970 U.S.Code Cong. & Ad.News 4566 ); *Alliance for Cannabis Therapeutics v. D.E.A.,* 15 F.3d 1131, 1137 (D.C.Cir.1994) (refusing to overturn findings of administrator who rejected rescheduling petition because of conflicting evidence regarding marijuana). Given the fact that there is an administrative procedure by which new evidence regarding marijuana can be submitted and by which the scheduling of the drug may be changed, *see Middleton,* 690 F.2d at 823, the court cannot say that it was irrational of Congress to act as it did, either generally under the CSA or more specifically as to the prohibition of medical marijuana.

### 4. Equal Protection Challenges

■ Finally, the plaintiffs raise equal protection challenges both to the CSA's criminalization of marijuana and to the policies pertaining to the compassionate use program. Plaintiffs have a heavy burden to meet in so arguing: "Because there is no colorable claim of a fundamental constitutional right to import or to distribute marijuana, the statutory scheme will be upheld unless it either has no rational relationship to a proper legislative purpose or violates a narrow and specific constitutional provision because of the manner in which it is implemented[.]" *United States v. Bergdoll,* 412 F.Supp. 1308, 1313 (D.Del. 1976) (citations, internal punctuation omitted).

A review of the standards applied is appropriate here. The Supreme Court has stated many times, in various forms, that whether one analyzes equal protection under the Fifth or the Fourteenth Amendment, "if a law neither burdens a fundamental right nor targets a suspect class,

---

**10.** As the government's brief acknowledges, one district court, *Andrews v. Ballard,* 498 F.Supp. 1038 (S.D.Tex.1980), found a fundamental right of privacy to receive acupunc-

ture treatment. This court believes that the bulk of the case law, including that of this circuit, forecloses such a holding.

we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); *see also Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) ("legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest"). As discussed previously, it has been repeatedly held that there is no fundamental right to use or possess or distribute marijuana. *See supra* § II.C.3. There is also no suspect or quasi-suspect class status at issue: there is no distinction relying on a category such as race, alienage, national origin, or sex that would invoke a higher level of scrutiny. *See, e.g., Cleburne,* 473 U.S. at 440–42, 105 S.Ct. 3249. Consequently, the proper standard of review is, again, the rational basis standard described above.

■■■■ In analyzing a challenge to a statute brought under a rational review standard, while the court should insist on "knowing the relation between the classification adopted and the object to be attained," a law will be "sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer,* 517 U.S. at 632, 116 S.Ct. 1620; *see also FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). The legislature is given particularly wide latitude when social or economic legislation is at issue. *See, e.g., Cleburne,* 473 U.S. at 440, 105 S.Ct. 3249. Moreover, a legislature may decide to tackle what it decides is a social problem piecemeal, "adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations." *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Regardless of the court's own assessment of the wisdom of a particular policy, "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Id.* In essence, the burden of a party challenging a law under a rational review standard is to demonstrate that the "asserted goal is so attenuated as to render the distinction arbitrary or irrational." *Id.* at 446, 105 S.Ct. 3249.

■■■ As to the plaintiffs' first challenge, there is no violation of equal protection in placing Marinol (synthetic THC)[11] and marijuana in different categories. As described previously, the fact that the government chooses to address one portion of a social problem and not others, or the fact that it treats different components of the problem differently, does not establish a violation of equal protection. *See, e.g., United States v. Fry,* 787 F.2d 903, 905 (4th Cir.1986) (holding that different treatment of alcohol and marijuana does not establish constitutional violation); *NORML v. Bell,* 488 F.Supp. 123, 137–38 (D.D.C.1980) (rejecting underinclusiveness challenge to placement of marijuana in Schedule I); *United States v. Maiden,* 355 F.Supp. 743, 746 (D.Conn.1973) (criminalization of marijuana is "not rendered irrational because a similar penalty is established for distribution of more dangerous substances, nor because other drugs with capacity for harm are not prohibited").[12]

---

**11.** Marinol is the trade name under which dronabinol, the synthetic equivalent of the primary psychoactive ingredient of marijuana, is sold. Marinol was transferred from Schedule I to Schedule II in 1985. *See* Final Rule and Statement of Policy, 51 Fed.Reg. 17, 476 (D.E.A. May 13, 1986) (codified at 21 C.F.R. § 1308.12(f)(1)). Presently, there is a proposal to move Marinol from Schedule II to Schedule III. *See* Notice of Proposed Rulemaking, 63 Fed.Reg. 59,751 (D.E.A. Nov. 5, 1998) (to be codified at 21 C.F.R. §§ 1308, 1312) (proposing to reschedule Marinol).

**12.** The court also accepts the possibility that plaintiffs may have intended to challenge this classification under a substantive due process approach, given the opacity of the classes that

A different conclusion must be reached, however, with respect to plaintiffs' claims regarding the compassionate use program. Here, the classification being challenged is apparent: plaintiffs argue that it is a violation of equal protection for the government to make an exception to its criminal laws for one group of individuals but not for another group of individuals that is similarly situated. As was described previously, three of the plaintiffs were approved for admission to that program but then denied marijuana. Other plaintiffs have been denied the ability to apply for the program.[13] The government's motion defends the decision to refuse to accept new applicants by stating both that no useful scientific results as to the efficacy and safety of marijuana to treat such illnesses came from that program and that it was "bad public policy and bad medical practice." *See* Mot. to Dismiss at 12.

While, when defending government actions under a rational review standard, the government has no burden to present evidence supporting its decision, *see, e.g., Heller v. Doe*, 509 U.S. 312, 320–21, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); *FCC v. Beach Comm., Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993), it is not clear that there is no set of facts that could be proven under which the plaintiffs would prevail. Notwithstanding the government's inclusion of attachments that purport to explain some of the operative facts regarding the compassionate use program,[14] without development of a factual record, the court cannot say that the government's decision to give marijuana to several people who are ill and the government's refusal to give it to the plaintiffs who are also ill is rational as a matter of law when plaintiffs have not had the opportunity to try to prove otherwise. Nor can the court say that the government's claimed failure to derive any useful scientific data from the program is a rational reason as a matter of law to exclude the plaintiffs from the program when the plaintiffs have not yet had the opportunity to challenge the basis for the government decision. That is, while actions such as those taken in the present case bear a strong presumption of validity, and those attacking the classification have the burden "to negative every conceivable basis which might support it," *Beach Comm., Inc.*, 508 U.S. at 317, 113 S.Ct. 2096 (citations omitted), the plaintiffs must at least be given the opportunity to make that challenge. The rational basis standard sets a very low threshold for government action, but it is not a rubber stamp that should automatically approve every gov-

are at issue. As the Third Circuit pointed out, although equal protection and substantive due process "employ essentially the same standard of review in cases involving economic and social legislation, the focus of the two clauses is different." *Knight v. Tape, Inc.*, 935 F.2d 617, 627 (3d Cir.1991). "Substantive due process looks to whether the law at issue bears any rational relationship to any interest that the state legitimately may promote." *Id.* Under the analysis applied above, the classification system would similarly be upheld under a substantive due process interpretation.

13. For purposes of this motion, the court will not address the question of whether proper analysis compares the present recipients in the compassionate use program with all individuals who wish to receive medical marijuana or with only those individuals who were accepted into the program but then denied marijuana.

14. There were two attachments to the motion. The first documents the withdrawal of plaintiff Robert Randall's motion for a TRO or a preliminary injunction in his case against the United States. That order states that "Mr. Randall, therefore, is no longer subject to the threat of irreparable injury to his vision caused by the unavailability of marijuana which formed the factual basis for his request for temporary relief." Notice of Withdrawal, Mot. to Dismiss, Ex. A. at 1. The second attachment is a letter from Philip Lee, the Assistant Secretary of Health, written to Representative Dan Hamburg. In this letter, Mr. Lee explains to the representative why the FDA will not reopen the "Food and Drug Administration's single patient investigational new drug program for therapeutic marijuana." *Id.* at Ex. B. at 1. The letter includes various fact sheets explaining the problems with medical marijuana.

ernment decision. *See, e.g., Schumacher v. Nix,* 965 F.2d 1262, 1269 (3d Cir.1992). Therefore, the court will deny the motion to dismiss only as to the equal protection challenges to the compassionate use program and allow limited discovery to permit plaintiffs to attempt to show that the decision was irrational under every conceivable justification.[15]

## III. Motion to Strike

The court will deny the motion to strike. Although the complaint is hardly a "short and plain" statement of any aspect of the claim, *see* Fed.R.Civ.P. 8(a), as was noted earlier, the gist of the complaint is easily discerned. That is, there is a sufficient statement of facts that the government is put on notice of the cause of action against it. *See Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir.1993). Moreover, the dismissal of the constitutional grounds except for the equal protection claims pertaining to the admission to the compassionate use program has the effect of clarifying the complaint to the point that any necessary discovery can easily be accomplished. The court will similarly deny the motion to strike the opposition to the motion to strike.

## IV. Plaintiff's Motion for Summary Judgment

In response to the government's motion to dismiss, the plaintiffs filed a motion for summary judgment. The motion does not include any legal or factual arguments but rather simply states that plaintiffs are entitled to summary judgment as a matter of law. The plaintiffs suggest that because the government attached the documents discussed in footnote fourteen to its motion, that motion must be converted as a matter of law into a motion for summary

judgment. The government, however, maintains that all of the documents attached were either public records or central to the plaintiffs' claims and accordingly may be considered in deciding a motion to dismiss.

■■■■■ The court rejects the arguments of both parties. When deciding a motion to dismiss, the court ordinarily may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment and giving the non-moving party an opportunity to supply appropriate responsive materials. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812–13 (3d Cir.1990); *JM Mechanical Corp. v. United States,* 716 F.2d 190, 196–97 (3d Cir.1983). The government agrees with this formulation but argues that the documents it attached fall within exceptions that permit the court to evaluate some written documents. The cases cited by the government are easily distinguished, however, and do not support the claim that the court may consider these appended documents in a motion to dismiss. The first case, *Oshiver v. Levin Fishbein,* 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994), does state without explanation that a court may consider matters of public record, exhibits, and the case record, but it refers to *Chester County Intermediate Unit,* 896 F.2d at 808, in support of that statement. That case upheld the consideration of documents a plaintiff attached to the complaint rather than items attached by another party in a motion to dismiss. The court specifically did not resolve the propriety of considering attachments by the moving party opposed by the non-moving party. *See id.* n. 6. The second case cited, *Venture Associates Corporation v. Zenith Data Systems Corp.,* 987 F.2d

---

15. The government called two cases to the court's attention during the oral argument on the motion. The court notes that the case in the D.C. Circuit, *Steffan v. Perry,* 41 F.3d 677 (D.C.Cir.1994), was based on a factual record presented during the district court's evaluation of a motion for summary judgment. *See*

*id.* at 684. The second case cited, *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), also was not decided on the basis of a motion to dismiss. *See Williams v. Dandridge,* 297 F.Supp. 450, 452 (D.Md.1968) (noting rejection of a motion to dismiss).

429, 431 (7th Cir.1993), permitted consideration of the contract attached by defendants to their motion to dismiss in a breach of contract claim. The present attachments are quite different and are "central" only in the sense that they deal with the same subject matter as the plaintiffs' claim. Consequently, the court will not consider these documents in the context of a motion to dismiss.[16]

However, the court also rejects plaintiffs' claim that the court must treat this as a summary judgment motion. As discussed at the hearing on these motions, the documents are not in the proper form for a summary judgment motion, and the appropriate course of action is to exclude the documents from consideration at this stage of the proceedings. Consequently, the court will reject plaintiffs' suggestion to treat this as a motion for summary judgment, and accordingly will deny their motion for summary judgment.

## IV. Conclusion

In dismissing the constitutional challenges to the CSA, the court does not wish to minimize the suffering that the plaintiffs have experienced or the degree to which the threat of criminal sanctions may have exacerbated their conditions. The difficulty is, however, that even while acknowledging the sympathy that all must feel for people afflicted with painful, debilitating physical ailments that cannot be remedied, the court cannot take the place of Congress. Where reasonable people may differ, the court is bound to defer to the will of the legislature. The court cannot avoid noticing that the jurisdictions that have adopted policies more congruent with those desired by the plaintiffs have achieved such change through referenda and ballot measures rather than through the courts.

A different conclusion must be reached regarding the plaintiffs' claims regarding access to the compassionate use program. The court cannot rule as a matter of law on the rationality of the government's action without giving the plaintiffs the opportunity to disprove any possible justification for the action.

An appropriate Order follows.

### ORDER

**AND NOW,** this day of March,, upon consideration of Defendant's Motion to Dismiss or Strike Amended Complaint Pursuant to Rules 8 and 12(b), Plaintiffs' Motion for Summary Judgment, the Defendant's Motion to Strike Opposition as Untimely, and the responses thereto, it is hereby **ORDERED** as follows:

1. The Defendant's Motion to Dismiss the Amended Complaint for failure to state a claim upon which relief can be granted is **GRANTED** in part and **DENIED** in part. The Motion is **GRANTED** with respect to all of plaintiffs' constitutional challenges to the Controlled Substance Act (including plaintiffs' claims relating to Marinol) under the Ninth Amendment, the Tenth Amendment, equal protection, privacy, and the commerce clause. These claims are **DISMISSED** with prejudice. The Motion to Dismiss is **DENIED** as to the equal protection challenges to the compassionate use program.

2. The Defendant's Alternative Motion to Strike the Amended Complaint is **DENIED.**

3. The Defendant's Motion to Strike Opposition to the Motion to Strike is **DENIED.**

4. The Plaintiffs' Motion for Summary Judgment is **DENIED.**

---

**16.** Similarly, the court does not consider the attachments to the government's memorandum addressing the question of settlement.