**UNITED STATES of America, Appellee,**

v.

**Robert H. FRY, Appellant.**

**No. 85–5162.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 8, 1985.

Decided March 31, 1986.

Rehearing and Rehearing En Banc Denied May 22, 1986.

Michael E. Winck, Asst. U.S. Atty. (David A. Faber, U.S. Atty., Charleston, W.Va. on brief), for appellee.

Before ERVIN, Circuit Judge, HAYNS-WORTH, Senior Circuit Judge, and WAR-RINER,* District Judge for the Eastern District of Virginia, sitting by designation.

HAYNSWORTH, Senior Circuit Judge:

This is an appeal from Fry's conviction for growing and conspiring to grow and distribute marijuana in violation of 21 U.S. C.A. §§ 841(a) and 846. He contends that the imposition of criminal sanctions upon the production of marijuana is so unreasonable and arbitrary as to be unconstitutional. He also challenges the sufficiency of the evidence that the plants he grew were marijuana plants.

We find no merit in either argument, though, at the defendant's request, we withheld decision to permit him to file a long supplemental brief in further support of the constitutional claims. We have carefully considered that brief, as well as the briefs filed by counsel and oral argument.

I.

After an aerial survey of Monroe County, West Virginia, State Trooper Coburn seized and destroyed 36 suspected marijuana plants on Fry's land and 3600 suspected marijuana plants on land owned by Ernie Aguilar. None of the plants were subjected to chemical analysis before their destruction.

In Fry's indictment, Aguilar and Tom Curran were named as unindicted co-conspirators. Aguilar was charged with growing marijuana, and was sentenced to three years imprisonment upon his plea of guilty. After Curran had been granted use immunity, he and Aguilar testified against Fry at Fry's trial. Fry was found guilty on both the conspiracy and the production counts and sentenced to five years in prison.

H.L. Kirkpatrick, III (Ashworth & Kirkpatrick, on brief), for appellant.

* Judge Warriner concurred in this opinion before his death on March 17, 1986.

## II.

Fry contends that the imposition of criminal penalties for the production and distribution of marijuana is so irrational and arbitrary that it violates the due process and equal protection clauses of the Fifth Amendment and his Ninth Amendment "liberty" right to be free of "gross arbitrary control" in his pursuit of happiness.

Fry claims that the Ninth Amendment guarantees him freedom to "recreate" through altering his consciousness. It is a fundamental right, he says, the exercise of which can be restricted or denied only upon a compelling governmental interest. *See, e.g., Stanley v. Georgia*, 394 U.S. 557, 565, 89 S.Ct. 1243, 1248, 22 L.Ed.2d 524 (1969); *Griswold v. Connecticut*, 381 U.S. 479, 496, 85 S.Ct. 1678, 1688, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring).

■ Of course, there are limitations upon governmental regulation of private lives and all activity in the privacy of one's home, but Fry does not stand convicted of "private" activity. He stands convicted of participation in a conspiracy to manufacture and distribute a large quantity of marijuana and not for simple possession or use of a small quantity of the drug. *See* 21 U.S.C.A. § 844(a). Fry was convicted of commercial activity. There is no fundamental right to produce or distribute marijuana commercially. *See United States v. Kiffer*, 477 F.2d 349, 352–53 (2d Cir.), *cert. denied*, 414 U.S. 831, 94 S.Ct. 165, 38 L.Ed.2d 65 (1973); *United States v. Bergdoll*, 412 F.Supp. 1308, 1313 (D.Del.1976).

The congressional decision to impose criminal penalties upon these activities must be upheld unless it bears no rational relation to a legitimate governmental purpose.

■ Fry and the government have produced masses of conflicting medical and scientific data bearing upon the harmfulness of marijuana. We, however, do not sit as a "superlegislature to judge the wisdom or desirability of legislative policy determinations." *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d

511 (1976) (per curiam). Congress made such a legislative determination when it imposed criminal sanctions upon the commercial production and distribution of marijuana. We must defer to that determination. *See Marshall v. United States*, 414 U.S. 417, 427, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1974). Upon the conflicting evidence, we cannot agree that the congressional decision to prohibit marijuana production and distribution was so irrational as to deprive Fry of due process.

■ It is also contended that since alcohol and tobacco are legal substances, the prohibition of the production and distribution of marijuana is so arbitrary as to amount to a deprivation of equal protection. Whatever the harmful effects of alcohol and tobacco, however, Congress is not required to attempt to eradicate all similar evils. *See Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). It is for Congress to weigh the conflicting considerations and determine the necessity and appropriateness of prohibiting trafficking in a dangerous substance, and it may conclude that prohibition of the trafficking in one such substance is appropriate though trafficking in another is left untouched. *Kiffer*, 477 F.2d at 355; *United States v. Gaertner*, 583 F.2d 308, 312 (7th Cir.1978) (per curiam). In holding that the challenged statutes are constitutional, we join those other courts of appeals which uniformly have rejected constitutional challenges to them. *See Gaertner, supra; Kiffer, supra; United States v. Rodriquez-Camacho*, 468 F.2d 1220, 1222 (9th Cir.1972), *cert. denied*, 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182 (1973); *see also United States v. Fogarty*, 692 F.2d 542, 547–48 (8th Cir.1982) (classification of marijuana as Schedule I drug constitutional), *cert. denied*, 460 U.S. 1040, 103 S.Ct. 1434, 75 L.Ed.2d 792 (1983); *United States v. Middleton*, 690 F.2d 820, 824 (11th Cir. 1982) (same), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1497, 75 L.Ed.2d 929 (1983).

## III.

■ Fry's contention that the evidence was insufficient to convict is based upon

the fact that there was no chemical analysis of any of the plants before their destruction. Trooper Coburn and co-conspirators Aguilar and Curran, however, all testified that the plants were marijuana plants. Such lay testimony is sufficient to support a jury finding that the plants were marijuana plants. *United States v. Scott*, 725 F.2d 43, 45 (4th Cir.1984).

### IV.

We find no infirmity in the conviction. AFFIRMED.