595 S.E.2d 883
**The STATE, Respondent,**
v.
**Ernest Dwight PERRY, Appellant.**
**No. 3783.**
Court of Appeals of South Carolina.
Submitted Dec. 8, 2003.
Decided April 26, 2004.

Senior Assistant Appellate Defender Wanda P. Hagler, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Assistant Attorney General W. Rutledge Martin, all of Columbia; and Solicitor William Townes Jones, of Greenwood, for Respondent.

CURETON, A. J.:

A jury convicted Ernest Dwight Perry of trafficking in marijuana, manufacturing marijuana, manufacturing marijuana on the lands of another, and resisting arrest. The trial judge sentenced Perry to concurrent sentences of twenty-five years for trafficking in marijuana, five years for manufacturing marijuana, five years for entry on another's land for the purpose of cultivating marijuana, and a consecutive sentence of one year for resisting arrest. Additionally, he was ordered to pay a fine of $25,000 for trafficking in marijuana. Perry appeals, arguing the trial judge erred: (1) in failing to direct a verdict as to the charges of trafficking in marijuana and manufacturing marijuana; (2) in denying his motion to require the State to elect to prosecute either manufacturing marijuana or entry on another's land for the purpose of cultivating marijuana; and (3) in denying his motion to quash the indictment charging him with assault on a police officer while resisting arrest. We affirm.

## FACTS

On July 21, 2000, the Newberry County Sheriff's Office conducted an eradication flight over different areas of the county in an attempt to locate marijuana. During this flight,

Investigator Wesley Boland spotted eight to ten plots of what appeared to be marijuana growing near Prosperity. He also saw hoses running through the woods to each of the plots. The hoses ran from a pump house behind Perry's residence. Officers with the Newberry County Sheriff's Department and the Newberry Police Department approached the house and found Perry at the pump house. Based on their investigation, the officers arrested Perry. As Officer Lawson was attempting to get Perry into the police car, Perry became belligerent and kicked Lawson in the right shin.

Subsequently, the officers obtained a search warrant and executed it on Perry's house and property. The water hoses from the pump house led to fourteen different plots on the adjacent property. Officer Robert Dennis testified he recovered several bags of marijuana from inside the house. Wayne Nichols owned the property where all the plants were growing. However, he testified he knew nothing about the marijuana and had not given Perry permission to grow marijuana on his property. While conducting the search of the property, the officers pulled up 456 marijuana plants. During the search, the officers inventoried, tagged, and processed the plants for future testing. Shortly thereafter, the officers transported the plants to a secure location.

At trial, Investigator Max Pickelsimer was qualified as an expert to analyze marijuana. He testified that he received 456 stalks of marijuana and analyzed thirty-four of the stalks. He explained the stalks were wet when they were bundled together and, as a result, they became stuck together as they dried. In attempting to separate them, he was able to get thirty-four plants that were strong enough to analyze, and that all thirty-four plants tested positive for marijuana.

Perry did not testify at trial. The jury convicted him of trafficking in marijuana, manufacturing marijuana, manufacturing marijuana on the lands of another, and resisting arrest. Perry appeals.

## DISCUSSION

### I. Directed Verdict

Perry contends the trial judge erred in denying his motion for a directed verdict on the charges of trafficking in marijuana and manufacturing marijuana. We disagree.

638

On appeal from the denial of a directed verdict in a criminal case, this Court must view the evidence in the light most favorable to the State. *State v. Al–Amin,* 353 S.C. 405, 411, 578 S.E.2d 32, 35 (Ct.App.2003); *State v. Morgan,* 352 S.C. 359, 364, 574 S.E.2d 203, 205 (Ct.App.2002). When ruling on a motion for a directed verdict, the trial judge is concerned with the existence or nonexistence of evidence, not its weight. *State v. Wilds,* 355 S.C. 269, 274, 584 S.E.2d 138, 140 (Ct.App. 2003). If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this Court must find the case was properly submitted to the jury. *State v. Harris,* 351 S.C. 643, 653, 572 S.E.2d 267, 273 (2002). On the other hand, if the State fails to produce evidence of the offense charged, a defendant is entitled to a directed verdict. *State v. McHoney,* 344 S.C. 85, 97, 544 S.E.2d 30, 36 (2001); *State v. Padgett,* 354 S.C. 268, 271, 580 S.E.2d 159, 161 (Ct.App.2003), *cert. denied* (Sept. 24, 2003).

## A.  Trafficking in Marijuana

■  Perry argues he was entitled to a directed verdict on the charge of trafficking in marijuana because the State failed to present evidence that he was in actual or constructive possession of 100 to 1000 marijuana plants, the quantity element of the offense. Specifically, he claims the State failed to establish this element of the offense given it only tested thirty-four of the seized plants.

A person is guilty of trafficking in marijuana if he is in actual or constructive possession of 100 to 1000 marijuana plants. S.C.Code Ann. § 44–53–370(e)(1)(b) (2002)[1]; *see State v. Muhammed,* 338 S.C. 22, 27, 524 S.E.2d 637, 639 (Ct.App. 1999) ("Possession requires more than mere presence. The State must show the defendant had dominion or control over the thing allegedly possessed or had the right to exercise dominion or control over it.").

Viewed in the light most favorable to the State, we find there was evidence that reasonably tended to prove Perry's guilt as to the charge of trafficking in marijuana. Investigator

---

1. We note section 44–53–370 was amended effective May 20, 2002. This amendment, however, does not affect the merits of this case.

Salazar testified that 456 marijuana plants were seized from property that was adjacent to Perry's residence. The hoses on the plots originated from a pump house behind Perry's residence. Police Chief Swindler testified he recognized all the plants as marijuana based on the appearance and the smell of the plants. Investigator Pickelsimer testified all the plants appeared to be of the same type and that the sample thirty-four plants all tested positive for marijuana. Based on this evidence, it could be fairly and logically deduced that Perry was in actual or constructive possession of 100 to 1000 marijuana plants. *See State v. Pinckney*, 339 S.C. 346, 349, 529 S.E.2d 526, 527 (2000) (stating in reviewing the refusal to grant a directed verdict in a criminal case, the evidence is viewed in the light most favorable to the State to determine whether there is any direct or substantial circumstantial evidence which reasonably tends to prove the guilt of the accused, or from which guilt may be fairly and logically deduced).

Our decision is supported by the holdings of several state and federal courts. For example, the Kentucky Court of Appeals upheld a conviction for trafficking in marijuana when the State presented evidence that only six of the ninety-eight plants that had been seized were tested and found to be positive for marijuana. *Taylor v. Commonwealth*, 984 S.W.2d 482, 484–85 (Ky.Ct.App.1998). Because the weight or amount of the marijuana was an element of the trafficking offense with which he was charged, Taylor argued that each plant used to determine the total weight should have been tested. The Court rejected this argument, finding there was no evidence that the ninety-two plants that were not tested were different from the six plants that were tested. *Id.* (relying on and discussing state and federal cases which held that the prosecution is not required to test samples from all individual portions of a controlled substance when the charged offense relates to a certain amount of a controlled substance).

Similarly, the Fourth Circuit Court of Appeals has held that the prosecution need not produce the results of any testing to survive a directed verdict motion for growing marijuana. *United States v. Fry*, 787 F.2d 903, 906 (4th Cir.), *cert. denied*, 479 U.S. 861, 107 S.Ct. 209, 93 L.Ed.2d 139 (1986). In *Fry*, the defendant was convicted of growing and conspiring to

grow and distribute marijuana. As one of his issues on appeal, Fry argued that the evidence was insufficient to convict because law enforcement destroyed all the plants they seized before performing chemical analysis. The Court affirmed Fry's convictions, holding testimony from two of Fry's co-conspirators and a law enforcement officer established the plants were marijuana plants. The Court ruled that "[s]uch lay testimony is sufficient to support a jury finding that the plants were marijuana plants." *Id.* at 906.

Based on the foregoing, the trial judge properly denied Perry's motion for a directed verdict as to the charge of trafficking in marijuana.

### B. Manufacturing Marijuana

■ Perry next argues the trial judge erred in declining to direct a verdict on the charge of manufacturing marijuana. Because the marijuana was not grown on his property, he contends there was insufficient proof of guilt on this charge.

Section 44–53–370 of the South Carolina Code makes it unlawful to "manufacture, distribute, dispense, deliver, ... a controlled substance or a controlled substance analogue." S.C.Code Ann. § 44–53–370(a)(1) (2002). As a threshold matter, the plain language of the statute does not require the manufacturing of marijuana to be on one's own property. *See State v. Baucom,* 340 S.C. 339, 342, 531 S.E.2d 922, 923 (2000) ("The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible."); *State v. Morgan,* 352 S.C. 359, 366, 574 S.E.2d 203, 206 (Ct.App.2002) ("The legislature's intent should be ascertained primarily from the plain language of the statute."). As such, the fact that someone else owns the property is irrelevant in proving the elements of the offense of manufacturing marijuana.

With this in mind, we turn to the issue concerning the sufficiency of the evidence. Viewed in the light most favorable to the State, we find the judge properly submitted to the jury the charge of manufacturing marijuana. Investigator Wesley Boland testified he was engaged in an eradication flight over Newberry County on July 21, 2000, when he observed marijuana growing in a field. He also observed water hoses

leading to a pump house behind Perry's house. Law enforcement executed a search warrant on Perry's property and found water hoses leading from Perry's pump house to fourteen different plots that had marijuana plants growing. This evidence reasonably tended to prove Perry's guilt. Thus, the trial judge properly denied Perry's motion for a directed verdict.

## II. Motion to Require the State to Elect

Perry asserts the trial judge erred in denying his motion to require the State to elect to prosecute either the offense of manufacturing marijuana or the offense of manufacturing marijuana on the land of another.[2] We disagree.[3]

At the close of the State's case, defense counsel moved for the State to elect between the two manufacturing offenses. Because the evidence only showed that the marijuana had been grown on Wayne Nichols's property, and not Perry's, counsel contended the jury could not find Perry "guilty of both under the circumstances in this case." The trial judge denied the motion. Based on the statutory language of the two offenses, the judge found the "Legislature intended for this to be a separate offense if you go onto the lands of another to do that."

---

**2.** Perry repeatedly refers to this offense as "manufacturing marijuana on the land of another." However, the actual offense charged is, "Entry on another's land for purpose of cultivating marijuana." S.C.Code Ann. § 16–11–617 (2003). Our Supreme Court has recognized the distinction between "cultivating" and "manufacturing." *State v. Walker*, 349 S.C. 49, 52 n. 2, 562 S.E.2d 313, 314 n. 2 (2002) (stating "[e]vidence sufficient to sustain a conviction for manufacturing marijuana may not always be sufficient to sustain a conviction for cultivating marijuana on the lands of another, even where there is no dispute the property belonged to someone other than the defendant"). Perry has never asserted any argument regarding this distinction.

**3.** Although it is not determinative of the outcome of this issue, we note the trial judge sentenced Perry to concurrent terms of five years imprisonment on these charges, which, in turn, were to be served concurrently with the twenty-five-year sentence Perry received for trafficking in marijuana. As such, we are not required to review this issue. *See State v. Ervin*, 333 S.C. 351, 359, 510 S.E.2d 220, 225 (Ct.App.1998) (recognizing appellate court has discretion to review issues concerning convictions which involve concurrent sentences).

## A.

■ "[A] motion to elect is addressed to the sound discretion of the court." *City of Greenville v. Chapman*, 210 S.C. 157, 159, 41 S.E.2d 865, 866 (1947). In *Chapman*, our Supreme Court stated:

The rule in this state is that distinct offenses—felonies or misdemeanors—may be charged in separate counts of the same indictment, whether growing out of the same transaction or not. If the several offense[s] charged do not grow out of the same transaction, then the proper practice is to require the prosecuting officer to elect upon which count he will proceed. But, when several offenses charged grow out of the same transaction, then the prosecuting officer is not required to elect, and the court instructs the jury to pass upon the several counts separately, and write their verdict accordingly.

*Id.* at 160, 41 S.E.2d at 866 (quoting *State v. Lee*, 147 S.C. 480, 483, 145 S.E. 285, 286 (1928)). In interpreting *Chapman*, this Court found that offenses may be joined in the same indictment and tried together "where they (1) 'aris[e] out of a single chain of circumstances,' (2) 'are proved by the same evidence,' (3) 'are of the same general nature,' and (4) no 'real right of the defendant has been jeopardized.' " *State v. Tate*, 286 S.C. 462, 464, 334 S.E.2d 289, 290 (Ct.App.1985) (quoting *Chapman*, 210 S.C. at 160, 41 S.E.2d at 867).

In the instant case, all of the charged offenses arose out of a single transaction and met the requirements outlined in *Tate*. Thus, the trial judge did not abuse his discretion when he denied Perry's motion to require the State to elect to prosecute either the offense of manufacturing marijuana or the offense of entering the land of another for the purpose of cultivating marijuana. *See Walker*, 349 S.C. at 52, 562 S.E.2d at 314 (indicating defendant may be indicted and tried for trafficking marijuana, manufacturing marijuana, and cultivating marijuana on the land of another); *see also State v. Hall*, 280 S.C. 74, 77, 310 S.E.2d 429, 431 (1983) (holding distinct criminal offenses may arise from a single act).

## B.

■ In a related argument, Perry claims the denial of this motion resulted in a double jeopardy violation. He asserts, "a

single manufacturing/cultivating offense applied to the case as opposed to the allegation that two manufacturing/cultivating offenses occurred."

Initially, we question whether this issue is preserved for our review. Based on the arguments presented at trial, we can discern no specific argument concerning a violation of double jeopardy. As such, we need not address this issue. *See Medlock v. One 1985 Jeep Cherokee VIN 1JCWB7828FT129001*, 322 S.C. 127, 132, 470 S.E.2d 373, 376 (1996) (holding double jeopardy issue must be raised to the trial court to be preserved for appellate review); *see also Humbert v. State*, 345 S.C. 332, 337, 548 S.E.2d 862, 865 (2001) (stating issues not raised and ruled upon in the trial court will not be considered on appeal). However, to the extent counsel's argument can be construed as relating to double jeopardy, we address the merits of the issue.

Section 44–53–370(a)(1) provides that it is unlawful for a person "to manufacture ... a controlled substance." S.C.Code Ann. § 44–53–370(a)(1) (2002). Pursuant to section 16–11–617, "[i]t is unlawful for a person to enter on the land of another for the purpose of cultivating or attempting to cultivate marijuana. *The provisions of this section are cumulative to other provisions of law.*" S.C.Code Ann. § 16–11–617 (2003) (emphasis added).

The United States Constitution and the South Carolina Constitution protect against double jeopardy. The Fifth Amendment to the United States Constitution provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. The South Carolina Constitution states: "No person shall be subject for the same offense to be twice put in jeopardy of life or liberty...." S.C. Const. art. I, § 12.

■ "The Double Jeopardy clause protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *State v. Nelson*, 336 S.C. 186, 195, 519 S.E.2d 786, 790 (1999). Our Supreme Court has reaffirmed that *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is "the only remaining test for determining a double jeopardy viola-

tion, in both multiple punishment and successive prosecution cases." *State v. Easler,* 327 S.C. 121, 132, 489 S.E.2d 617, 623 (1997).

■ "In *Blockburger v. United States,* the United States Supreme Court held where the same act or transaction constitutes a violation of two distinct statutory provisions, 'the test to determine whether these are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.'" *Stevenson v. State,* 335 S.C. 193, 198, 516 S.E.2d 434, 436–37 (1999) (quoting *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180). However, "a court may conclude there is no double jeopardy violation even if the same elements test is met where the legislature clearly intends multiple punishments for a single act." *State v. Price,* 333 S.C. 267, 270 n. 4, 510 S.E.2d 215, 217 n. 4 (1998).

Because the offense of cultivating or attempting to cultivate marijuana on the land of another requires proof of an element that is not present in the charge of manufacturing marijuana, there exists no double jeopardy violation. Furthermore, based on the plain language of section 16–11–617, the General Assembly clearly intended for this offense to be cumulative to other provisions of the law. Therefore, it did not violate Perry's protection against double jeopardy to be convicted of both offenses. *Cf. State v. Brown,* 319 S.C. 400, 408, 461 S.E.2d 828, 831 (Ct.App.1995) (emphasizing that "there is no [double jeopardy] prohibition against the contemporaneous prosecution by the State for both possession with intent to distribute and distribution of crack cocaine and the related school charges where . . . they arise out of the same conduct").

### III. Motion to Quash the Indictment
### for Resisting Arrest

■ Perry contends the trial court erred in denying his motion to quash the indictment charging him with assault on a police officer while resisting arrest. Because the date of the offense as stated in the indictment was incorrect, Perry argues the indictment was defective and, as result, the court was without subject matter jurisdiction. We disagree.

At trial, defense counsel moved to "quash" [4] the indictment after Officer Lawson testified to the physical altercation with Perry. Counsel argued the two-count indictment alleged the incidents occurred on July 24, 2000, but all the testimony indicated the incidents happened on July 21, 2000. The trial judge denied the motion, but stated he would reconsider the motion at the close of the State's case.

After the State rested its case, Perry renewed his motion, arguing he was in jail on July 24, and "the State has failed to prove the [sic] sufficient evidence with respect to that particular indictment." [5] The State relied on the language in the indictment, ". . . did in Newberry County, state aforesaid, on or about the 24th day of July, 2000, willfully and unlawfully resist an arrest. . . ." Additionally, the State argued the indictment was sufficient to put Perry on notice of the charges against him and it had met the burden on each element of the charge. The trial judge again denied the motion on the ground that it was a typographical error. The judge reasoned, "I think everyone has been on the same page since day one that it was alleged that at the time he was arrested it is no question that it was on the 21st."

■■ A circuit court has subject matter jurisdiction over a criminal offense if: (1) there has been an indictment that sufficiently states the offense; (2) there has been a waiver of indictment; or (3) the charge is a lesser-included offense of the crime charged in the indictment. *Carter v. State,* 329 S.C. 355, 362, 495 S.E.2d 773, 777 (1998). "An indictment passes legal muster if it 'charges the crime substantially in the language of the . . . statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood. . . .'" *State v. Reddick,* 348 S.C. 631, 635, 560 S.E.2d 441, 443 (Ct.App.2002) (quoting S.C.Code Ann. § 17–19–

---

4. Counsel never specifically made a motion to quash the indictment but simply stated the dates in the indictment were incorrect based on the testimony.

5. The language used by defense counsel in renewing his motion at the close of the State's case indicates that he was actually moving for a directed verdict on this charge. On appeal, Perry only raises an argument regarding the validity of the indictment and not the sufficiency of the evidence.

20(1985)); *see* S.C.Code Ann. § 17–19–20 (2003) ("Every indictment shall be deemed and judged sufficient and good in law which, in addition to allegations as to time and place, as required by law, charges the crime substantially in the language of the common law or of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood and, if the offense be a statutory offense, that the offense be alleged to be contrary to the statute in such case made and provided.").

The indictment for the charge of resisting arrest provided:

That ERNEST DWIGHT PERRY, did in Newberry County, state aforesaid, on or about the 24th day of July, 2000, wilfully and unlawfully resist an arrest being made by one whom the said defendant knew or reasonably should have known was a law enforcement officer, to wit: Officer Curtis Lawson, in violation of section 16–9–320 of the South Carolina Code of Laws, 1976, as amended[.]

The text of this indictment charges the crime of resisting arrest in substantially the same language as section 16–9–320(1). S.C.Code Ann. § 16–9–320(A) (2003) ("It is unlawful for a person knowingly and wilfully to oppose or resist a law enforcement officer in serving, executing, or attempting to serve or execute a legal writ or process or to resist an arrest being made by one whom the person knows or reasonably should know is a law enforcement officer, whether under process or not."). As such, there is no jurisdictional defect given Perry was apprised of the offense with which he was being charged.

## CONCLUSION

Accordingly, Perry's convictions and sentences are

**AFFIRMED.**

HOWARD and KITTREDGE, JJ., concur.