# United States Court of Appeals
## For the First Circuit

No. 24-1628

CANNA PROVISIONS, INC.; GYASI SELLERS; WISEACRE FARM, INC.;
VERANO HOLDINGS CORP.,

Plaintiffs, Appellants,

v.

PAMELA J. BONDI, Attorney General*

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Barron, Chief Judge,
Montecalvo and Rikelman, Circuit Judges.

David Boies, with whom Jonathan D. Schiller, Matthew L.
Schwartz, David P.G. Barillari, Joshua I. Schiller, and Boies
Schiller Flexner LLP were on brief, for appellants.
Daniel Aguilar, Attorney, Appellate Staff, Civil Division,
U.S. Department of Justice, with whom Brian M. Boynton, Principal
Deputy Assistant Attorney General, Civil Division, U.S. Department
of Justice, Mark B. Stern, Attorney, Appellate Staff, Civil
Division, U.S. Department of Justice, and Sarah Carroll, Attorney,
Appellate Staff, Civil Division, U.S. Department of Justice, were
on brief, for appellee.

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2),
Attorney General Pamela J. Bondi is automatically substituted for
former Attorney General Merrick B. Garland as Defendant-Appellee.

May 27, 2025

BARRON, **Chief Judge**. The appellants are four businesses that allege that they cultivate, manufacture, possess, and/or distribute marijuana wholly within Massachusetts in full compliance with its laws and regulations. In 2023, they sued the Attorney General of the United States. They claimed that the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq., "as applied to [their] intrastate cultivation, manufacture, possession, and distribution of marijuana pursuant to state law," exceeded Congress's powers under Article I of the United States Constitution and violated the Due Process Clause of the Fifth Amendment to the Constitution. They sought a declaratory judgment to that effect. They also sought an injunction prohibiting the enforcement of the CSA as to them, "in a manner that interferes with the intrastate cultivation, manufacture, possession, and distribution of marijuana, pursuant to state law." The District Court dismissed the appellants' claims for failing to state a claim on which relief could be granted. We affirm.

## I.

## A.

Congress enacted the CSA in 1970, as part of the Comprehensive Drug Abuse Prevention and Control Act. Gonzales v. Raich, 545 U.S. 1, 10-12 (2005). "The main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." Id. at 12. To do

- 3 -

so, "Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA."  Id. at 13 (citing 21 U.S.C. §§ 841(a)(1), 844(a)).

The CSA grouped all controlled substances into five "schedules" based on their "accepted medical uses, the potential for abuse, and their psychological and physical effects on the body."  Id.  Each schedule imposed "a distinct set of controls regarding the manufacture, distribution, and use of the substances listed therein."  Id. at 14.

The CSA classified marijuana as a Schedule I drug, which made "the manufacture, distribution, or possession of marijuana . . . a criminal offense," except as authorized by the CSA.  Id.  "Despite considerable efforts to reschedule marijuana, it remains a Schedule I drug."[1]  Id. at 15.

In Raich, the Supreme Court of the United States ruled on a claim that the CSA exceeded Congress's Article I powers under the Commerce Clause and the Necessary and Proper Clause insofar as that statute applied to possession and cultivation of marijuana for personal medical use in compliance with state law.  Id. at 7-8.  There, the plaintiffs were two individuals who wished to

---

[1] In May 2024, the Attorney General issued a notice of proposed rulemaking that contemplates transferring marijuana from Schedule I to Schedule III.  89 Fed. Reg. 44597 (May 21, 2024). The administrative process remains pending.

grow and possess marijuana for personal medical use based on a physician's recommendation in accord with a California law that, notwithstanding the CSA, authorized such activity as a matter of state law. Id.

Raich rejected the constitutional challenge on the ground that Congress had a rational basis for concluding that the failure to regulate "the intrastate cultivation and possession of marijuana for medical purposes based on the recommendation of a physician would substantially affect the larger interstate marijuana market." Id. at 21-22. The Court explained that the CSA's criminalization of the cultivation and possession of marijuana for personal medical use in compliance with state law was "an essential part of a larger regulatory scheme" for regulating marijuana that the CSA establishes. Id. at 30.

Beginning roughly a decade later, however, Congress each year has attached a rider to its annual appropriations bill. The rider concerns the authority of the U.S. Department of Justice with respect to state-regulated medical marijuana. It provides:

> None of the funds made available under this Act to the Department of Justice may be used, with respect to any of [the listed states and territories] to prevent any of them from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana.

Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, § 531, 138 Stat. 25, 174 (2024); see also United States v. Sirois, 119

- 5 -

F.4th 143, 145 (1st Cir. 2024) (noting the same). This rider -- often referred to as the "Rohrabacher-Farr Amendment" -- "places a practical limit on federal prosecutors' ability to enforce the CSA with respect to certain conduct involving medical marijuana." United States v. Bilodeau, 24 F.4th 705, 709 (1st Cir. 2022). In addition, in 2010, Congress permitted the District of Columbia to enact a medical marijuana program.

**B.**

In advancing their as-applied challenge to the CSA, the appellants refer in their complaint to the post-Raich federal legislative developments just mentioned. They also allege that, as of the time of the complaint's filing, twenty-three states had created regulated intrastate markets for non-medical, adult-use marijuana. Their complaint asserts that, in consequence of these developments, Raich's rationale for upholding the CSA against the challenge in that case provides no basis for upholding it against their challenge to the CSA based on Congress having exceeded its Article I powers. Their complaint separately alleges that the CSA is unconstitutional as applied to their activities under the Due Process Clause of the Fifth Amendment.

The government moved to dismiss the complaint for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). As to the claim based on Article I, the government contended that "Raich's holding that the

CSA is within Congress'[s] power under the Commerce Clause and Necessary and Proper Clause, even as applied to intrastate marijuana activity compliant with state law, forecloses" the challenge.  As to the claim based on substantive due process, the government argued that there is no fundamental right "to cultivate, manufacture, possess, and distribute marijuana, subject only to state health, safety, and public welfare regulations," and that "the CSA easily satisfies rational basis scrutiny."

The District Court granted the government's motion.  The District Court reasoned that, because Raich held that "an aggregation of limited, non-commercial marijuana activity" provided a "rational basis" for Congress's conclusion that such activity would "substantially affect interstate commerce," it was bound by that precedent to "find the same to be true of [p]laintiffs' larger-scale, commercial activities."  It also reasoned that "[t]here [was] simply no precedent for concluding that [p]laintiffs enjoy a fundamental right to cultivate, process, and distribute marijuana," and "[i]n the absence of a fundamental right to engage in the cultivation, processing, and distribution of marijuana, [p]laintiffs cannot prevail on their substantive due process claim."

This appeal timely followed.

**II.**

The appellants bear the burden of demonstrating that the CSA, as applied to their conduct, exceeds Congress's power under the Commerce Clause and the Necessary and Proper Clause as well as that the CSA violates the Due Process Clause of the Fifth Amendment.  See Dep't of State v. Muñoz, 602 U.S. 899, 903 (2024). "We review de novo an order dismissing a complaint for failure to state a claim . . . ."  Lee v. Conagra Brands, Inc., 958 F.3d 70, 74 (1st Cir. 2020).

**III.**

The Commerce Clause of the United States Constitution provides that "Congress shall have [the] [p]ower . . . [t]o regulate Commerce . . . among the several States."  U.S. Const. art. I, § 8, cl. 3.  The appellants do not dispute that they are engaged in commercial activity through their cultivation, manufacture, possession, and/or distribution of marijuana.  They nonetheless contend that this commercial activity is purely "local" or "intrastate" in the sense that it takes place entirely within Massachusetts.  They then go on to contend that Congress's power under the Commerce Clause and the Necessary and Proper Clause does not extend to this activity, notwithstanding that it is commercial in nature.

In pressing this contention, the appellants assert that "myriad changes, both in federal legislation and the markets for

marijuana, mean that the new marijuana regime today cannot satisfy the standard set out in Raich." We begin with their contention insofar as it rests on post-Raich changes in "federal legislation." We then consider their contention insofar as it rests on post-Raich changes in "the markets for marijuana."

**A.**

In asserting that changes in federal legislation render Raich inapposite, the appellants focus chiefly on the Rohrabacher-Farr Amendments. They contend that those amendments show that "Congress has abandoned its goal of controlling all marijuana in interstate commerce" and thus that "[t]he current regime . . . lacks the comprehensiveness that was a predicate for Raich's upholding of the CSA." They further contend that those amendments show that "not even Congress believes that prohibiting state-regulated marijuana is 'essential to the effective control of the interstate incidents' of marijuana." (Quoting Raich, 545 U.S. at 12 n.20). As a result, they contend that Raich no longer "directly controls" because these post-Raich federal legislative developments reveal that regulating their activity -- given that it occurs wholly intrastate, subject to state regulatory regimes -- is not "an essential part of the larger regulatory scheme" for regulating marijuana that the CSA establishes. (Quoting Raich, 545 U.S. at 27).

- 9 -

As an initial matter, we observe that the Rohrabacher-Farr Amendments are of limited scope. They restrict the U.S. Department of Justice only from using federal funds "to prevent any of [the listed states and territories] from implementing their own laws that authorize the use, distribution, or cultivation of medical marijuana." Consolidated Appropriations Act, 2024 § 531 (emphasis added). The appellants are challenging the CSA, however, insofar as it applies to their cultivation, manufacture, possession, and distribution of marijuana without regard to whether that activity is for a medical purpose. And the appellants do not explain why, under Raich, the regulation of such activity is not "an essential part of the larger regulatory scheme" that the CSA establishes, even accounting for the Rohrabacher-Farr Amendments. Raich, 545 U.S. at 27. After all, notwithstanding those appropriation riders, the CSA remains fully intact as to the regulation of the commercial activity involving marijuana for non-medical purposes, which is the activity in which the appellants, by their own account, are engaged.

It may be that the appellants mean to suggest that Raich may not be understood to treat any legislative scheme regulating marijuana as "comprehensive" for purposes of triggering its "essential part" rationale unless that scheme regulates all marijuana. But even if we were to accept that questionable

- 10 -

premise, it would not help the appellants, given the commercial nature of their activity.

The Court did not suggest in Raich that Congress may rely on its Article I powers under the Commerce Clause and the Necessary and Proper Clause to regulate any activity involving marijuana only as part of its regulation of all activity involving marijuana. Instead, the Court there relied on the comprehensiveness of the CSA's regulatory regime and the "essential part" rationale only in the context of a challenge to the CSA as applied to the cultivation and possession of marijuana for personal medical use -- and thus as applied to what was in and of itself a non-commercial activity. See id. at 18-22. The appellants' challenge, by contrast, concerns the CSA's application to activity that the appellants do not dispute is commercial in nature. Yet, they identify nothing in Raich that indicates that even when an activity that the CSA covers is commercial in nature, its regulation must be an "essential part" of the CSA for Congress to have the Article I power to cover that activity via the CSA. Nor do we see anything in Raich that so indicates.[2]

---

[2] The appellants' reliance on Hobby Distillers Association v. Alcohol & Tobacco Tax & Trade Bureau, 740 F. Supp. 3d 509 (N.D. Tex. 2024), is unavailing for the same reason. While that case understood Raich to require "an established, comprehensive regulatory regime," id. at 532, it did so in considering an as-applied challenge to the regulation of non-commercial activity -- there, "home-distilling beverage alcohol for personal consumption," id. at 516-17.

- 11 -

The other "change[] . . . in federal legislation" to which the appellants point in challenging the ruling below based on the "essential part" test is Congress's choice in 2010 to permit the District of Columbia to enact laws legalizing medical marijuana within the District. That federal legislative change, however, also solely concerned medical marijuana. The appellants' argument regarding this federal legislative development thus would appear to suffer from precisely the same defects as their contentions pertaining to the Rohrabacher-Farr Amendments. And, insofar as the appellants mean to suggest that this federal legislative change demonstrates some problem with the application of the CSA to their conduct that the Rohrabacher-Farr Amendments do not, they do not explain what that problem might be. Any such contention is therefore waived for lack of development. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

**B.**

The appellants also contend that post-Raich changes in "the markets for marijuana" mean that Congress may no longer regulate their marijuana activity under the Commerce Clause and Necessary and Proper Clause. Here, the appellants rely on United States v. Wrightwood Dairy Co., 315 U.S. 110 (1942), for the proposition that Congress may regulate intrastate

- 12 -

activities -- even those that are commercial in nature -- only if they "in a substantial way interfere with or obstruct the exercise of the granted power" to regulate interstate commerce, id. at 119.

The appellants contend that "there is no longer any reason to assume that state-regulated marijuana activities 'in a substantial way interfere with or obstruct the exercise of the granted power' to regulate interstate commerce in marijuana," (quoting United States v. Lopez, 514 U.S. 549, 556 (1995)), because "the decades since Raich have shown Congress's former concerns about swelling interstate traffic and enforcement difficulties can no longer be supported." In that regard, the appellants emphasize the allegations in their complaint that "states' medical and adult-use marijuana programs have drastically reduced illicit interstate and international commerce in marijuana" and that "state-regulated marijuana products are distinguishable (from each other and from illicit interstate marijuana) based on the labelling and tracking requirements that states impose."

Of course, for purposes of assessing Congress's power under the Commerce Clause and the Necessary and Proper Clause to regulate an activity, the question that we must ask is not "whether [appellants'] activities, taken in the aggregate, substantially affect interstate commerce in fact." Raich, 545 U.S. at 22. The question is "whether a 'rational basis' exists for so concluding." Id.

- 13 -

In addition, Raich held that Congress had a rational basis for concluding that failing to regulate "the intrastate cultivation and possession of marijuana for medical purposes based on the recommendation of a physician would substantially affect the larger interstate marijuana market." Id. at 21. And, in so ruling, the Court explained that the activity at issue there was not beyond Congress's reach under Article I because

> [o]ne need not have a degree in economics to understand why a nationwide exemption for the vast quantity of marijuana . . . locally cultivated for personal use (which presumably would include use by friends, neighbors, and family members) may have a substantial impact on the interstate market for this extraordinarily popular substance.

Id. at 28. Raich also observed that "[t]he notion that [state] law has surgically excised a discrete activity that is hermetically sealed off from the larger interstate marijuana market is a dubious proposition, and, more importantly, one that Congress could have rationally rejected." Id. at 30; see also United States v. Nascimento, 491 F.3d 25, 42 (1st Cir. 2007) ("Raich teaches that when Congress is addressing a problem that is legitimately within its purview, an inquiring court should . . . . respect the level of generality at which Congress chose to act.").

Against that backdrop, we find it significant that the "exemption" that is being sought via the asserted limits on Article I here would allow for more than the possession and

- 14 -

cultivation for personal medical use of marijuana -- as was the case in Raich itself. The "exemption" would allow for the commercial cultivation, manufacture, possession, and distribution of marijuana for both medical and non-medical purposes. The appellants, in other words, are asking for a "nationwide exemption" that is much broader than the one that Raich held Article I did not require, both in the kinds of conduct and the "quantity of marijuana" that would be exempted. 545 U.S. at 28.

True, the appellants allege that, as of the time of their complaint, the availability of regulated markets for marijuana in individual states has decreased interstate commercial activity involving marijuana. They allege, too, that state-regulated marijuana is distinguishable from illicit interstate marijuana. But, as we have emphasized, the relevant question is whether Congress could rationally conclude that an intrastate activity would "substantially affect interstate commerce" if not regulated. Id. at 22. And, as we have noted, in rejecting the "exemption" sought in that case, the Court in Raich relied on the conclusion that Congress could rationally conclude that a "vast quantity of marijuana" that a state permits to be lawfully used within its borders, id. at 28, subject to its regulation, would not remain "hermetically sealed off from the larger interstate marijuana market," id. at 30.

We thus do not see how we could conclude that Congress has no rational basis for similarly concluding as to the much larger exemption sought here.  There is a difference between the factual predicate that may support a legislative choice and the kind of factual predicate that could compel a court to impose a constitutional limit on that choice.  We thus conclude that the appellants have failed to show that there is no rational basis for concluding that their activity substantially affects interstate commerce.

To the extent that the appellants may be understood to be contending that Congress had to have made specific findings that the intrastate cultivation, manufacture, possession, and/or distribution of marijuana in compliance with a given state's laws allowing for such intrastate activity would substantially affect the larger interstate market, we are also unpersuaded.  Congress is not required to make "detailed findings proving that each activity regulated within a comprehensive statute is essential to the statutory scheme." Id. at 21 n.32.  For that reason, the Court rejected the analogous argument made by the appellants in Raich that Congress had not made "a specific finding that the intrastate cultivation and possession of marijuana for medical purposes based on the recommendation of a physician would substantially affect the larger interstate marijuana market."  Id. at 21.

Relatedly, the appellants fault the District Court for "refus[ing] to permit [the appellants] to prove that the CSA's findings today are unsupported." But even they concede that "Raich permits courts to dispense with fact finding when the connection to Congress's interstate goals is 'visible to the naked eye.'" (Quoting Raich, 545 U.S. at 28-29). And, for reasons we have explained, that connection is no less "visible" here than it was in Raich.

## C.

For the foregoing reasons, we conclude that the appellants have not plausibly alleged that the CSA's prohibition on the "intrastate cultivation, manufacture, possession, and distribution of marijuana pursuant to state law," as applied to them, exceeds Congress's authority under the Commerce Clause and the Necessary and Proper Clause.

## IV.

The appellants separately challenge the District Court's dismissal of their claim that the CSA is unconstitutional under the Fifth Amendment's Due Process Clause as applied to their intrastate commercial activity involving marijuana because "the CSA's prohibition on state-regulated marijuana violates Plaintiffs-Appellants' rights to cultivate and transact in marijuana" for both medical and recreational purposes. In that regard, the appellants contend that the "right[] to cultivate and

transact in marijuana" for such purposes is "deeply rooted in this nation's history and its legal traditions." They further contend that the right is "further reinforced" by "current legal trends, which include the vast majority of the states . . . permitting the cultivation and distribution of marijuana." We are not persuaded.

## A.

The Due Process Clause of the Fifth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 720 (1997). To establish such a fundamental right, a plaintiff must show that the asserted right is "objectively[] 'deeply rooted in this Nation's history and tradition,'" id. at 720-21 (quoting Moore v. City of East Cleveland, 431 U.S. 494, 503 (1977)), and "'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed,'" id. at 721 (quoting Palko v. Connecticut, 302 U.S. 319, 325, 326 (1937)). In addition, the plaintiff must provide a "careful description of the asserted fundamental liberty interest." Muñoz, 602 U.S. at 910 (quoting Glucksberg, 521 U.S. at 721). If the plaintiff succeeds in establishing the existence of a fundamental right, the government "can act only by narrowly tailored means that serve a compelling state interest." Id. "As a general matter," the Supreme Court "has always been reluctant to expand the concept of substantive

- 18 -

due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992).

Every circuit to have addressed similar substantive due process claims related to the use, cultivation, or sale of marijuana has rejected them. See United States v. Kiffer, 477 F.2d 349, 352 (2d Cir. 1973) ("[T]here is no colorable claim of a fundamental constitutional right to sell marihuana."); United States v. White Plume, 447 F.3d 1067, 1075 (8th Cir. 2006) (no fundamental right to "hemp farming"); United States v. Fry, 787 F.2d 903, 905 (4th Cir. 1986) (no fundamental right to "produce or distribute marijuana commercially"); Raich v. Gonzales, 500 F.3d 850, 864-66 (9th Cir. 2007) (no fundamental right to use medical marijuana); Borges v. Cnty. of Mendocino, No. 22-15673, 2023 WL 2363692, at *1 (9th Cir. Mar. 6, 2023) (no fundamental right to cultivate marijuana); see also United States v. Cannon, 36 F.4th 496, 502 (3d Cir. 2022) (per curiam) (noting, on plain error review, that "it is certainly not 'clear under current law' that there is any fundamental right to use medical marijuana" (quoting United States v. Olano, 507 U.S. 725, 734 (1993))). We see no reason to part ways with our sister circuits in addressing appellants' as-applied challenge.

In arguing that we must, the appellants first point to historical practices in the original colonies prior to the

- 19 -

founding. They argue that "[e]ach of the thirteen original colonies enacted" laws concerning marijuana -- "then known simply as 'hemp'" -- some of which "encouraged (or even required)" colonists to grow marijuana. The appellants also rely on allegations regarding marijuana use in the United States "[a]round the [p]assage of the Fourteenth Amendment," which they say show that "Americans were using marijuana for medicinal and recreational purposes" at the time and that "marijuana was 'highly valued'" at the time for these uses. Finally, the appellants assert that English sources, including the Magna Carta, "created . . . rights concerning hemp cultivation" and sometimes even "made the cultivation of hemp compulsory." The sum total of this historical evidence, the appellants contend, establishes "a long legal tradition of recognizing the importance of marijuana commerce" and proves that "the 20th-century movement towards banning and criminalizing marijuana, which culminated in 1970 with the CSA, is a historical aberration compared to the practices in this country in the 17th, 18th, [and] 19th . . . centuries."

The appellants' reasoning would mean that there would be a fundamental right to grow and sell any product that founding era laws encouraged residents of that time to grow and sell. We decline to adopt a line of reasoning that would support such "sweeping claims of fundamental rights," Abigail All. for Better Access to Developmental Drugs v. von Eschenbach, 495 F.3d 695, 707

(D.C. Cir. 2007), particularly given that the rights in question must be those that are "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty," Glucksberg, 521 U.S. at 721 (first quoting Moore, 431 U.S. at 503; and then quoting Palko, 302 U.S. at 325).

**B.**

There remains to address only the appellants' argument that "[t]he widespread adoption of state-regulated marijuana programs further demonstrates the importance of marijuana commerce." But we know of no authority -- and the appellants identify none -- that supports the proposition that an activity not otherwise protected as a fundamental right under the Due Process Clause may become so protected solely because many states have in recent times provided legislative protections for that activity. We thus hold that the appellants have not plausibly alleged that the CSA's prohibition on "the intrastate cultivation, manufacture, possession, and distribution of marijuana pursuant to state law," as applied to their activities, violates the Fifth Amendment.[3]

---

[3] For the first time in their reply brief, the appellants gesture at an argument that the CSA's ban on intrastate marijuana commerce in compliance with state law would fail even rational basis scrutiny. Insofar as they mean to make that argument, we decline to address it. See Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015) ("Our precedent is clear: we do not consider arguments for reversing a decision of a district

**V.**

For the foregoing reasons, the District Court's dismissal of the plaintiffs-appellants' claims is **affirmed**.

---

court when the argument is not raised in a party's opening brief."); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).